MYRTLE A. GILLETT v. JOHN ROMIG, DANIEL W. HARDING, AND DON A. GILLETT.

(Filed September 5, 1096.)

1. MORTGAGE—Rights of Mortgagee—Purchase at Mortgage Sale. A mortgagee who enters into possession peaceably, as purchaser under foreclosure proceedings, cannot be dispossessed by the mortgagor or his grantees so long as the mortgage remains unsatisfied.

2. SAME—Grantee of Such Purchaser. Under the facts in this case H., as the grantee of R., the purchaser at the foreclosure sale, stands in the shoes of the mortgagee, and his right to relief must be measured and determined by the well-recognized principles of equity.

3. DUE PROCESS OF LAW—Property Rights. No man shall be condemned in his rights of property, as well as his rights of person, without his day in court; that is, without being duly cited to answer respecting them, and being heard or having an opportunity of being heard thereon.

4. MORTGAGE—Title Passes Under, When. In this jurisdiction, a mortgage upon real estate creates only a lien in favor of the

mortgagee, and neither the legal nor the equitable title passes to the mortgagee until after a valid foreclosure and sale thereunder.

5. SAME—Rights of Mortgagors and Mortgagee. The rights of the mortgagee in possession are not adverse to the rights of the mortgagor or his grantee, so long as the relation of the mortgagor and mortgagee exists.

6. SAME—Same—Rents and Profits. H., as the grantee of the purchaser at the foreclosure sale, stands in the shoes of the mortgagee, and must be treated as a mortgagee in possession and it is incumbent upon him to account for the rents and profits derived from the land from the time he was in possession thereof.

7. SAME— Same—Application to Indebtedness. Appellant, or her grantees, have a right to have these rents and profits applied to the payment of the mortgage indebtedness, which includes not only the principal sum of the indebtedness, but all accruing interest, taxes, assessment, and other proper charges.

8. SAME—Same—Credits to be Allowed Mortgagee in Possession. The mortgagee or his grantee in possession should be allowed and credited in his account with the cost of all ordinary, reasonably necessary repairs made to the premises, and with all reasonable disbursements and expense necessary for the proper management and protection of the estate. And if any permanent improvements have been erected with the consent or acquiescence of the mortgagor, or his grantees, which increase the value of the estate, just and proper allowances should be made therefor.

9. PLEADING AND PRACTICE— Transfer of Realty Pendente Lite. Rights of Purchaser. In a case of a transfer of real estate during the pendency of the litigation, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action.

10. SAME—Necessary Parties in the Action. Under the facts of this case, appellant as well as R. and S. are not only proper but necessary parties to a full and complete determination of this action.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before James K. Beauchamp, Trial Judge.*

*James W. Steen, H. J. Sturgis,* and *Cotteral & Hornor.* for plaintiff in error.

*Huston & Buckner, D. D. Temple,* and *Buckner & Buckner,* for defendants in error.

STATEMENT OF FACTS.

On February 2, 1895, Don A. Gillett executed and delivered to John Romig his promissory note for $700, payable two .years after date, bearing interest at the rate of twelve per cent. per annum, payable semi-annually in advance. This note was secured by a real estate mortgage, executed by said Don A. Gillett, on the east half of the northeast quarter of section 18, township 22 north, range 6 west of the Indian meridian, being in Garfield· county, Oklahoma.

On February 6, 1895, Don A. Gillett sold and transferred said land, by warranty deed, to Myrtle Gillett, subject to the above mortgage.

On March 11, 1896, John Romig brought an action in the district court of Garfield county, against Don A. Gillett and Myrtle Gillett, to recover a personal judgment against Don A. Gillett for $749, with interest, costs, and attorney's fees, and to foreclose the mortgage as to both defendants. The service in this case was by publication. On June 2, 1896, John Romig, by his attorney, D. D. Temple, filed an affidavit upon which publication service was based. The affidavit in reference to the non-residence of the defendants is as follows:

"Affiant further states, upon information and belief, that said defendants, Don A. Gillett and Myrtle Gillett, are nonresidents of the Territory of Oklahoma, and that service of summons cannot be made upon said defendants, Don A. Gillett and Myrtle Gillett, within the said Territory of Oklahoma, and that said plaintiff wishes to obtain service upon said defendant by publication."

On December 18, 1896, judgment was entered by default against Don A. Gillett and Myrtle Gillett, for the sum of

$766.50 and costs, and foreclosure of the real estate mortgage upon the above described premises.

On February 23, 1897, said property was sold under the above decree of foreclosure, and on March 2, 1897, motion was made by counsel for John Romig to confirm the sale; and on the same day the sale was confirmed, and deed ordered to be made to John Romig.

In May 11, 1898, Myrtle Gillett appeared for the first time, and filed her motion to set aside and vacate the judgment, on the following grounds:  (1)  That the court had no jurisdiction of the defendant, Myrtle Gillett.  (2)  Because the said court had no jurisdiction to render said judgment.  (3)  That the defendant was, at all times during the pendency of said action, a resident of the Territory of Oklahoma, and that no summons was ever served upon her.  (4) That the service by publication was irregular and void.

On August 27, 1898, Daniel W. Harding filed a motion and affidavit, in opposition to the motion of Myrtle Gillett to set aside the judgment, on the ground that on March 9, 1897, for a valuable consideration, in good faith, he purchased the east half of the northeast quarter of section 18, township 22 north, range 6 west of the I. M., excepting a strip of eighty feet off of the west side from the northern to the southern boundary of the land in controversy, and that since the date of the purchase he has been in full and complete possession of said land.

On September 20, 1898, Myrtle Gillett filed her affidavit in support of the motion to vacate the judgment.  And on March 2, 1899, she filed the additional affidavit of Guy R. Gillett in support thereof.  These affidavits showed that at

the time the publication service was had Myrtle Gillett was, and long prior thereto had been, a resident of Kingfisher county, Oklahoma.

On April 15, 1899, the court sustained the motion to vacate and set aside the judgment of foreclosure, on the ground that no service was had upon Myrtle Gillett, and that the judgment was void for want of jurisdiction, and ordered that the possession of the said John Romig, mortgagee, and his grantee, Daniel W. Harding, was wrongfully obtained, and that all the proceedings under the foreclosure proceeding were void, and that Myrtle Gillett was entitled to restitution of the premises. Motion for a new trial was thereupon duly filed by John Romig, and also by Daniel W. Harding, which motions were overruled, exceptions saved, and an appeal prosecuted to the supreme court of Oklahoma.

On June 20, 1900, the supreme court of Oklahoma affirmed the judgment of the court below. *Romig v. Gillett, et al.,* 10 Okla. 186. From this judgment an appeal was prosecuted to the supreme court of the United States, by Romig and Harding, and the decree of the supreme court of Oklahoma was reversed, and the cause remanded on January 8, 1903, with instructions to set aside the order of the trial court, and to direct the entry of one which, without disturbing the possession of Harding, will give to the appellee the right to appear, plead and make such defense as under the facts of the case and the principles of equity she is entitled to. *Romig v. Gillett,* 187 U. S. 111.

Pursuant to the mandate of the supreme court of the United States, on June 3, 1903, the supreme court of Oklahoma remanded the cause to the district court of Garfield

county, directing the trial court to enter an order which, without disturbing the possession of Daniel W. Harding, will give to the appellee, Myrtle Gillett, the right to appear, plead and make such defense as under the facts of the case and the principles of equity she is entitled to; and that the district court of said Garfield county will cause the parties to be notified of the order and decree, and that Myrtle Gillett be allowed thirty days from the service of notice of the decree within which to appear, plead and make such defense as she in law or equity may be entitled to.

On July 1, 1903, the district court of Garfield county entered an order that the judgment and decree heretofore entered in the case of *John Romig v. Don A. Gillett and Myrtle Gillett,* rendered on December 18, 1896, be and the same is vacated and set aside, and that Myrtle Gillett be granted permission to appear in said cause within thirty days of the date of the service of this order, with the right to plead and make such defense as under the facts of the case and the principles of equity she is entitled to.

On December 1, 1903, Myrtle Gillett entered her appearance, by waiving issuance and service of notice, and filed her answer and cross-petition. The material averments in her answer and cross-petition are as follows: That she admits the execution and delivery of the note sued on, and the mortgage securing the same, that she is interested in said premises, and that she denies each and every other allegation in the plaintiff's petition, that on February 6, 1895, Don A. Gillett, for a valuable consideration, sold and transferred the above described premises to her, subject to the mortgage of John Romig; that on March 11, 1896, she was the owner

in fee simple of the premises above described, subject to the mortgage of John Romig; that on September 24, 1900, for a valuable consideration, she executed a deed, in fee simple, to an undivided one-half of said premises to George P. Rush and Bruce Sanders, and on the 29th day of March, 1902, she conveyed the remaining one-half interest in said premises to the said George P. Rush and Bruce Sanders, by warranty deed, subject to the mortgage of John Romig; that there is due the defendant, Myrtle Gillett, from George P. Rush and Bruce Sanders an unpaid balance of purchase money of $250, for which she has no security, excepting a vendor's lien upon the premises above described; that Rush and Sanders are necessary parties to the final determination of the controversy herein, and that they be made parties defendant herein. And thereupon Myrtle Gillett pleaded in her answer and cross-petition the prior proceedings in said case, and that on March 9, 1897, John Romig had sold and transferred the east half of section 18, township 22 north, range 6 west of the Indian meridian to Daniel W. Harding, and a copy of which deed is attached to and made a part of said answer and cross-petition; and that since the said date the said Harding has been in possession of said premises, that said Harding be charged with the rents and profits of said premises since said date, and that an accounting be taken between said Myrtle Gillett and Romig and Harding, and that the rents and profits of the real estate be applied to the payment of the mortgage indebtedness, that if the mortgage debt, interest, and charges are not fully satisfied, that the said Myrtle Gillett is ready and willing and able to satisfy such remaining indebtedness, and hereby tenders such payment in satisfaction into court. On the other hand, if the rents and profits

of said real estate exceed the mortgage indebtedness, interest, taxes and other proper charges, then that the said Myrtle Gillett have judgment against the said Daniel W. Harding and John Romig for the amount found to be due her. And that said Myrtle Gillett have judgment against Rush and Sanders for the sum of $250, being the balance claimed to be due for the transfer of her interest in said premises to them; and for such relief as equity may require.

Rush and Sanders made application to be made parties in the cause, setting up in their answer facts substantially the same as contained in the answer and cross-petition of Myrtle Gillett. This application was denied.

To the answer and cross-petition of Myrtle Gillett, Romig and Harding interposed demurrers, which demurrers were overruled by the court, and exceptions saved.

Thereupon John Romig filed his reply to the answer and cross-petition of Myrtle Gillett, in which he admitted the execution of the note and mortgage, as alleged in the answer and cross-petition of the said Myrtle Gillett; denied that Myrtle Gillett had any interest in said premises; that the attempted conveyance to Rush and Sanders was illegal and void; denied that she could acquire any vendor's lien on the premises during the pendency of said action in the supreme court of Oklahoma and in the supreme court of the United States; denied that she had any right, power, or authority to appear and defend in the action, and the court should find and decree that said Myrtle Gillett had no right or interest in and to said premises.

Daniel W. Harding, grantee of John Romig, filed an answer and interplea to the cross-petition of Myrtle Gillett, in

which he alleged that he was the grantee of the east half of the northeast quarter of section 18, township 22 north, range 6 west of the Indian meridian, save and except a strip of land eighty feet wide off of the west side of said tract; that he had purchased said land from John Romig, after a decree of foreclosure had been rendered on December 18, 1896; that said transfer and sale from Romig to said Harding was made on March 9, 1897, and that he was immediately put in possession of said premises, and has been in the quiet, peaceable and undisturbed possession since said date; that said land was purchased in good faith, and without any notice or knowledge of any supposed or apparent defect in the title to the land conveyed to him, and that he is an innocent purchaser in good faith for value, and without notice, and that he has made valuable, permanent and lasting improvements on the land of the value of $5,000.00; and has paid taxes, assessments, penalties, and charges against said land to the amount of $437.50; and he prays that his title, interest, and possession of said land be not disturbed, or in any wise affected by further proceedings in said cause; and that he recover his costs herein expended; and for relief as in law and equity he may be entitled to.

To this answer and interplea of Harding, Myrtle Gillett filed a reply, in which she denied each and every allegation inconsistent with her answer and cross-petition, and specifically denied that said Harding had expended five thousand dollars in erecting improvements thereon, and denied that he had paid taxes amounting to $437.50.

Thereupon Romig and Harding moved for judgment upon the pleadings, and on June 6, 1904, the cause came on

regularly to be heard, all parties appearing by their respective attorneys, and the court after hearing the argument, and being advised in the premises, finds that Myrtle Gillett has no right, title, interest, estate or equity in or to the land in controversy herein, except that she has a vendor's lien, to the amount of $250; that the plaintiff, John Romig, has a right to redeem from said lien of Myrtle Gillett, and to pay the same to protect his warranty of title to the interpleader, Daniel W. Harding.

And thereupon in open court Romig made a tender to Myrtle Gillett of the sum of $250, which tender was by the said Myrtle Gillett refused. Thereupon John Romig paid to the clerk of the court the sum of $250, as a tender to said Myrtle Gillett, to be held by the clerk subject to the accepteanc thereof by Myrtle Gillett.

Thereupon the court sustained the motions of John Romig and Daniel W. Harding for judgment on the pleadings, forever barring and foreclosing Myrtle Gillett from any and all right, title, interest, estate, or equity in or to the lands herein described; and renistated, confirmed and ratified the decree rendered on December 18, 1896, in favor of John Romig, and against Don A. Gillett and Myrtle Gillett; and further found that Daniel W. Harding was the purchaser of said land for a valuable consideration, and that his right, title, interest and possession to said land should not be affected by any proceeding hereafter had or instituted by Myrtle Gillett, and that he should have judgment quieting his title to said land. To which finding, order, judgment, and decree of the court Myrtle Gillett duly excepted and which exception was allowed, and she brings the case here for review.

Opinion of the court by

HAINER, J.:  The record in this case discloses that the affidavit upon which service by publication was based, and which was made upon information and belief, was untrue, and that at that time, and long prior thereto, Myrtle Gillett was a resident of Kingfisher county, and by the exercise of the slightest diligence this fact could have been ascertained.

. We do not wish to be understood as holding in this case that a mere defective affidavit, upon which service by publication is based, would be sufficient to render a judgment based upon it absolutely void, but when the evidence establishes the fact that the affidavit was false, and that the defendant at the time was not a non-resident of the territory, but in fact a *bona fide* resident of the territory, and by the exercise of the slightest diligence such residence could be known to the plaintiff, and these facts are conclusively established by the evidence, it must follow as an irresistable conclusion that the judgment cannot be permitted to stand, for the reason that the court acquired no jurisdiction.

In the former trial, the error committed by the court was this:  That Harding being a grantee of the mortgage in possession, his right and his possession could not be disturbed by the mortgagor or his grantee, Myrtle Gillett, until the mortgage debt, and interest, and all proper charges were fully paid.  In other words, the maxim that "he who seeks equity must do equity," applies  and before the rights of Harding could be determined, and his possession disturbed, it devolved upon Myrtle Gillett, the grantee, of the mortgagor, to do full equity and these we think are the views of

the supreme court of the United States, as expressed in *Romig v. Gillett*, 187 U. S. 111. In this case the supreme court of the United States seemed to be of the opinion that the decision of the supreme court of Oklahoma was based merely upon the fact of the defective affidavit upon which the service by publication was had; but the decision of the trial court, as well as the decision of our court, was based upon a broader ground than the mere fact of a defective affidavit for service by publication; that is, that at the time the defective publication notice was had Myrtle Gillett was a resident of Kingfisher county, Oklahoma, and no evidence having been offered in opposition to this fact on the motion to set aside the foreclosure proceedings, therefore it must be taken as true. But the error that the trial court, as well as this court, fell into, was in dispossessing Harding before doing full equity in the premises. Mr. Justice Brewer, on page 116 of the opinion, says:

"By virtue of the proceedings the mortgagee was put into possession—a possession which he transferred to the appellant, Harding. Under those circumstances what right has the appellee, a grantee from the mortgagor? The foreclosure was a proceeding in equity, although its various steps were prescribed by statute. Equitable principles must control the measure of relief. Even if the publication had been founded upon an affidavit perfect in form and the decree and all proceedings had been in strict conformity to the statute, yet by section 3955 the defendant would be let in to defend upon compliance with certain conditions.

"Assuming that that section is not fully applicable because of the defect in the affidavit, yet the appellee comes into a court of equity seeking relief against the foreclosure of a mortgage. In such a case there are almost always certain conditions of relief. If the mortgage be valid the rights of

the mortgagee and those claiming under him are to be protected."

And again, on page 117, it is said:

"She, (Myrtle Gillett) does not pretend in her affidavit that the mortgage was invalid or that it had been paid. She claims by a deed subsequent to the mortgage, and simply insists that she has not had her day in court, and therefore her rights, which, so far as appears, are only the rights of redemption, have not been cut off. Harding, as the grantee of the purchaser at the foreclosure sale, stands in the shoes of the mortgagee. *Bryan v. Brasius,* 162 U. S. 415. As shown by the opinion in that case and cases cited therein, a mortgagee who enters into possession, not forcibly, but peacefully, and under the authority of a foreclosure proceeding, cannot be dispossessed by the mortgagor, or one claiming under him, so long as the mortgage remains unpaid."

The opinion then concludes as follows:

"The decree of the supreme court of Oklahoma will be reversed and the case remanded to that court, with instructions to set aside the order of the trial court, and to direct the entry of one which, without disturbing the possession of Harding, will give to the appellee the right to appear, plead and make such defense as under the facts of the case and the principles of equity she is entitled to."

In other words, the appellant, Myrtle Gillett, was to have her day in court, and she was to be permitted "to appear, plead and make such defense as under the facts of the case and the principles of equity she is entitled to." On the other hand, Harding as the grantee of the purchaser at the foreclosure sale, and who stands in the shoes of Romig, the mortgagee, is to be fully protected, under the well-recognized principles of equity, to the end that full justice may be done to all the parties herein.

Since the decision of the supreme court of this territory and the decision of the supreme court of the United States in this case, our supreme court, in the case of *Burke v. Malaby,* 14 Okla. 650, has held that:

"The provisions of sec. 48, civil code, Wilson's Statutes, sec. 4246, requiring certain classes of civil actions to be brought in the county in which the subject of the action is situated, is, in so far as it relates to resident defendants, in irreconciliable conflict with the provisions of the act of congress, sec. 10, organic act, requiring that 'All civil actions shall be instituted in the county in which the defendants or either of them reside or may be found,' and such provisions of the code are void as inconsistent with the laws of the United States.

"An action affecting an interest in real estate in this territory where the real estate is situated in one county and the defendant resides in a different county, must be instituted in the county where the defendant resides."

But whether the foreclosure proceedings were absolutely void or merely voidable, or irregular and defective, one thing is sure, that the appellant, Myrtle Gillett, is entitled to have her day in court, and have her rights fully and finally adjudicated. It seems to us that the language of the supreme court of the United States that she has the right "to appear, plead and make such defense as under the facts of the case and the principles of equity she is entitled to," is as broad and as clear as language could express it, and this is in harmony with the decision of the supreme court of the United States in the case of *Terrel v. Allison,* 88 U. S. 289, where Mr. Justice Field, speaking for the court, says:

"It is a rule old as the law that no man shall be condemned in his rights of property, as well as in his rights of person, without his day in court; that is, without being duly

cited to answer respecting them, and being heard or having opportunity of being heard thereon."

And on page 283 the learned justice says:

"The old common-law doctrine of mortgages does not generally prevail in the several states of the Union. In most of them the mortgage is not regarded as a conveyance, but is treated as a mere lien or incumbrance upon the property as security for the payment of a debt, or the performance of some other pecuniary obligation. But the owner of the property, whether the original mortgagor or his successor in interest, has the same right to be heard respecting the existence of the debt or other obligation alleged before the property can be sold, which at common law, the owner of the equity of redemption had to be heard before the foreclosure of his equity could be decreed."

In this jurisdiction a mortgage upon real estate creates only a lien in favor of the mortgagee, and neither the legal nor the equitable title passes to the mortgagee until after a valid foreclosure and a sale thereunder. *Balduff v. Griswold,* 9 Okla. 439.

Section 3189 of the Statutes of 1893 provides as follows:

"Every person having an interest in property subject to a lien has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

In vol. 3 (3 ed.) Pomeroy's excellent treatise on Equity Jurisprudence, section 1188, in construing statutes like ours, it is said:

"The mortgage is not a conveyance, nor does it confer upon the mortgagee any estate *in* the land. It creates a lien *on* the land, or, in apt language already quoted, 'a potentiality to follow the land by proper process and condemn it

for payment' of the debt. The debt is the principal fact, and the mortgage is wholly incidental or collateral thereto, and intended to secure its payment. The right or interest of the mortgagee from being a legal estate is changed into an equitable right enforceable by an equitable proceeding; it is for all purposes and under all circumstances personal assets; it may be assigned, and passes to the mortgagee's personal representatives on his death. The mortgagee is not entitled to possession of the mortgaged premises, and can maintain no legal action for their recovery, either before or after a breach of the condition; in fact, the mortgagor's default produces no change in the relations of the parties or in the nature of their respective interests, except that the mortgagee thereupon becomes enabled to enforce his lien by a proceeding of foreclosure."

It is contended by appellees that the transfer of the land in controversy from the appellant, Myrtle Gillett, to Rush and Sanders pending this litigation, was void as against the rights of the mortgagee, and his grantee, Harding, who was in possession of the premises. But this contention, we think, is untenable, because Harding cannot hold the premises in controversy adverse to the rights of the mortgagor or his grantee, Myrtle Gillett. The rights of a mortgagee in possession are not adverse, and cannot be adverse to the rights of the mortgagor or his grantees.

In vol. 20 A. & E. Enc. Law, page 975, the rule is thus stated:

"The possession by either the mortgagor or the mortgagee of the land covered by the mortgage is not adverse as to the other, at any rate until after the mortgage is repudiated by the mortgagor, or the mortgagee has in some manner asserted an absolute title in himself to the property in his possession, or his claim is satisfied. In this respect the

relationship existing between them is analogous to that of a trustee and his *cestui que trust.*"

In vol. 1, "Cyc." page 1071, this rule is laid down:

"So long as the relation of mortgagor and mortgagee exists, the possession of the mortgagee is not adverse to the mortgagor."

The possession of the mortgagee in this case, and his grantee, Harding, being based upon a foreclosure proceeding that is a nullity, in such circumstances their rights could not be adverse to the rights of the mortgagor or his grantees and their rights are to be determined merely as mortgagees in possession. Hence, we think the appellant, Myrtle Gillett, had the right to sell or transfer any interest she had in the premises pending the litigation, and that the conveyance to Rush and Sanders was valid and binding, and should have been recognized by the trial court. It was error for the court to refuse to permit Rush and Sanders to be made parties defendant, in order that their rights might be fully adjudicated in this action. But nothwithstanding the fact that appellant conveyed a part or all of her interest in the premises to Rush and Sanders, the statute gave her the undoubted right to continue the litigation in her name until it was finally terminated. And further she had the right to continue the litigation in her name for the purpose of protecting her vendor's lien, and having her rights therein adjudicated, and also for the purpose of protecting her warranty of title to her grantees. It seems to us that the statute sets this question absolutely at rest. Section 40, page 768, code of civil procedure, Statutes of 1893, provides as follows:

"In case of any other transfer of interest, the action may be continued in the name of the original party, or the

court may allow the person to whom the transfer is made, to be substituted in the action."

Our conclusion of this branch of the case is, then, that the appellant, Myrtle Gillett, and Rush and Sanders are not only proper but necessary parties to a full and complete determination of this action.

But it is contended by the appellee that it was not incumbent on Harding to look further into the proceedings of the court than the regularity of the face of the judgment itself; and that when he found it to be regular, unappealed from, and final, his title is good as against every one. This argument is fallacious, for the reason that it is based upon the assumption that the foreclosure proceedings were, in all respects, regular. He was bound to know whether the court had jurisdiction to render the decree, and this would require him to examine the service which was the basis of the decree. The record clearly discloses that the proceedings were at least irregular, and Harding was bound to take notice of the defects, and the insufficiency of the affidavit for publication upon which the service in this case was based.

But one questions remains, and that is the rights and liabilities of the mortgagee or his grantee in possession as to accounting for the rents and profits while in possession of the land without the consent of the mortgagor or his grantees.

In *Cook v. The Ottawa University,* 14 Kans. 548, the supreme court of Kansas, speaking by Mr. Justice Brewer, lays down the following rule:

"A mortgagee in possession is responsible for the rents and profits, is allowed for the ordinary repairs, but not for

permanent improvements placed upon the mortgaged premises merely for his convenience."

Pomeroy, in his work on Equity Jurisprudence, (3 ed.) vol. 3, section 1216, states this doctrine as follows:

"The general duty of the mortgagee in possession towards the premises is that of the ordinary prudent owner. He must account, in general, for their rents and profits, or for their occupation value."

And in section 1217 of the same volume it is said:

"The mortgagee is allowed, and credited in his account, with the cost of all ordinary, reasonably necessary repairs made to the premises, and with all reasonable disbursements and expenses necessary for their proper management and protection.

*"Improvement:* The mortgagee will be allowed for permanent improvements, increasing the value of the estate, if made *with the consent* or acquiscence of the mortgagor; but he cannot be allowed for such expenditures when made *without* the mortgagor's consent. He is bound to keep the property without unreasonable deterioration, and is therefore credited with necessary repairs; but he has no right to enhance the value of the estate, and thus render it more difficult for the mortgagor to redeem."

Since Harding as grantee of the mortgagee and purchaser at the foreclosure sale stands in the shoes of the mortgagee, and is regarded as a mortgagee in possession, it is incumbent on him to account for the rents and profits derived from the land, from the time he was put in possession thereof. The appellant, Myrtle Gillett, or her grantee, has the right to redeem and to have these rents and profits applied to the payment of the mortgage indebtedness, which includes not only the principal sum of the indebtedness, but all accruing interests, taxes, assessments and other proper charges.

And, on the other hand, Harding should be allowed and credited in his account with the cost of all ordinary reasonably necessary repairs made to the premises, and with all reasonable disbursements and expenses necessary for the management and protection of the estate. And if any lasting improvements have been erected with the consent or acquiescence of the mortgagor, or his grantees, which increased the value of the estate, just and proper allowance should be made therefor. While, as a general rule, the mortgagee, or his grantee, will not be allowed for permanent improvements which enhance the value of the estate, if made without the consent or acquiescence of the mortgagor or his grantees, this rule has been relaxed in its application to certain special conditions of fact by many American cases, as stated by Mr. Pomeroy, in his valuable note to section 1217, *supra* which hold that the mortgagee, or his grantee, is allowed for such improvements when made by him under the *bona fide,* but mistaken, supposition that he was the absolute owner of the premises, and that the equity of redemption had been barred.

We think the answer and cross-petition of the appellant stated facts sufficient to constitute an equitable defense, under the well-recognized principles of equity, and therefore the court erred in sustaining the motions for judgment on the pleadings.

The judgment of the district court is reversed, and the cause remanded with directions to overrule the motions for judgment on the pleadings, and to proceed further in consonance with the views herein expressed.

Gillett, J., not sitting; all the other Justices concurring.