## BABCOCK v. ORCUTT et al.

No. 7690—Opinion Filed Oct. 24. 1916.

(160 Pac. 729.)

1. **Subrogation—Foreclosure—Effect of Void Proceeding—Subrogation to Rights of Mortgagee.**

The grantee of a purchaser at a void judicial sale, where the grantee and the purchaser both acted in good faith, and without notice of the irregularities in the proceedings, becomes the equitable assignee of the mortgagee, and where such grantee goes into the actual possession of the land under his deed from the purchaser, he occupies the position of a mortgagee in possession and entitled to be subrogated to all the rights of the mortgagee.

2. **Same.**

Where the grantee of a purchaser at a void judicial sale goes into actual possession of the land in good faith, believing himself the owner of the title, and without notice of any irregularities in the judicial proceedings, and pays off a prior existing mortgage at maturity and redeems the land from such mortgage, which mortgage he assumed and agreed to pay in his deed from the purchaser, he has such an interest in the land as will give him the right to redeem it from the mortgage lien, and he becomes the equitable assignee of the mortgagee and occupies the position of a mortgagee in possession, and is subrogated to all the rights and equities of the mortgagee.

(Syllabus by de Graffenreid, C.)

Error from District Court. Comanche County; Cham Jones, Judge.

Action by F. H. Babcock against George A. Orcutt and others. Judgment in part for plaintiff, and in part for defendants. The plaintiff brings error, and files case-made with petition in error, and defendants E. F. Applegate and another also file objection in error, attached to the same case-made. Reversed with directions.

George L. Zink and James H. Cline, for plaintiff in error.

B. M. Parmenter, for defendants in error.

Opinion by de GRAFFENREID, C. Plaintiff in error will be denominated plaintiff, and defendants in error defendants. Plaintiff filed his petition in the district court of Comanche county containing two causes of action:

First cause of action alleges in substance:

First. That defendants George A. Orcutt and Alvina Orcutt, his wife, on June 23, 1909, executed a note to the defendant Central Investment Company for $1,300, bearing 6 per cent. interest, and to secure payment of the same they executed a mortgage on the land described in the petition, which land is the subject-matter of this suit. That said mortgage was duly recorded, and at the said time the Orcutts were the owners of the land, and that on July 17, 1909, the Central Investment Company for valuable consideration assigned said note and mortgage to Isabell W. Daggett.

Second. That after the execution of the above note, to wit, June 23, 1909, the Orcutts executed to the Central Investment Company a second promissory note for the sum of $130, and at the same time executed a

second mortgage on the same land to the Central Investment Company to secure the payment of this note.

Third. On October 12, 1909, the Orcutts sold the land covered by these two mortgages to J. Y. Morgan, subject to these mortgages.

Fourth. Morgan and wife afterwards sold the land to Applegate and took three promissory notes, aggregating $550 as the purchase price, which notes were secured by the mortgage on the same land, making the third mortgage.

Fifth. The Orcutts defaulted in payment of the $130 note to the Central Investment Company, which was the note secured by the second mortgage, and on August 12, 1911, the Central Investment Company brought suit in the district court of Comanche county against George A. Orcutt, Alvina Orcutt, J. Y. Morgan, and E. F. Applegate for the sum due on said note secured by said second mortgage and for foreclosure of the second mortgage lien subject to the right of Isabell Daggett under the first mortgage; said cause being No. 3159. On December 8, 1911, judgment was rendered in said cause in favor of plaintiff for $243.45, and attorney fees for $50, and in favor of J. Y. Morgan for $599.96, the foreclosure of the third mortgage, both to be subject to the mortgage of $1,300 executed to the Central Investment Company, owned by Isabell W. Daggett.

Sixth. On July 25, 1913, said land was sold under this judgment foreclosing the lien at sheriff's sale, and was bid in by the Central Investment Company for $250, being less than its judgment. Which sale was afterwards confirmed by the court, and deed was duly executed by the sheriff to the Central Investment Company, conveying said land. After deed had been taken by the Central Investment Company it then paid certain taxes due upon said land.

Seventh. On February 18, 1914, the Central Investment Company sold the land to the plaintiff, F. H. Babcock, and executed warranty deed to said land, subject to the mortgage held by Isabell W. Daggett, and in which deed the plaintiff assumed the payment of said Daggett mortgage, and plaintiff thereupon went into the actual peaceable possession of said land has continued in possession up to now.

Eighth. That afterwards, to wit, on July 1, 1914, the principal note which had been assigned to Mrs. Daggett for $1,300 became due, and that the amount due upon said note on said date was $1,378, which amount the plaintiff Babcock paid, and the note was surrendered to him by Isabell W. Daggett, and the mortgage canceled on the record.

Ninth. At the time of the institution of the suit No. 3159. the owner of the title to said land, Applegate, was a nonresident of the state, and the plaintiff in that suit undertook to obtain service on him by publication, but the notice of the suit was not published a sufficient length of time, which defect was not discovered by any of the parties until after the note and mortgage owned by Mrs. Daggett had been paid off by plaintiff. The judgment was therefore void as to the defendant Applegate, the owner of the land.

Tenth. At the time that the plaintiff purchased the land from the Central Investment Company, he did so, relying on the regularity of the judgment of foreclosure and confirmation of the sale and the sheriff's deed, without any notice of any defect in the judicial proceeding.

Eleventh. The plaintiff prays for judgment against the Orcutts for the sum of $1,502, and attorney fees, and costs, and that he be declared the equitable assignee of Isabell W. Daggett as to the note and mortgage paid by him, being the first mortgage, and that he have a foreclosure of said mortgage and that it be held superior to all other mortgages.

For second cause of action plaintiff in substance asks that he be declared the equitable assignee of the Central Investment Company for the amount paid by him to the purchasers at said void sale, and for all taxes paid by said purchasers and all taxes paid by him, and that he be subrogated and declared the mortgagee in possession of all the rights of the Central Investment Company.

The defendant Central Investment Company filed its answer, admitting the truth of the allegations of the petition, and claiming no interest in the land or subject-matter of the suit. The defendants Applegate and wife filed an answer and cross-petition, in which they admit all the statement in paragraphs 1, 2, 3, 4, 5, and 6 in plaintiff's petition. And defendants admit the execution and delivery of the note and mortgage to Morgan for $550, and admit that Morgan and wife sold and conveyed them the land in controversy. And defendants further admit the allegation contained in the eighth paragraph, and also the ninth paragraph. They admit all statements and facts alleged in paragraph 10. They further admit facts contained in paragraph 11, except that they deny that plaintiff was in possession of said

land under a color of title, but admit that he was in possession; they admit the allegation in paragraph 12, but deny that plaintiff had color of title, and deny the claim of Morgan and the Applegates constituted a cloud upon the plaintiff's title, and deny, by reason of the facts set out in the first cause of action, plaintiff should be subrogated to the note and mortgage held by Isabell W. Daggett, and deny his right to foreclose the mortgage. Defendants further admit the allegation in paragraph 13, except they deny that plaintiff is entitled in equity, in the event of redemption of said real estate, to have the said sum of $78 and $45 taxes paid.

For answer to the second cause of action the defendants Applegate deny that the plaintiff should be subrogated to and declared the equitable assignee for the money judgment rendered in favor of the Central Investment Company.

For answer the defendants Morgan admit the execution and delivery of all the notes and mortgages as alleged in plaintiff's petition, but they deny that the plaintiff is the equitable assignee of the Central Investment Company, and deny that the plaintiff is the equitable assignee of Isabell W. Daggett, and that he is not entitled to be subrogated to their rights in any manner, but that the payment of said mortgage by Isabell Daggett was voluntary, and that he cannot become subrogated to their rights. That the mortgage of Isabell Daggett had been fully paid, and the liens canceled, and that the plaintiff had no right, title, or interest whatever in said land.

This case was tried to the court without a jury on an agreed state of facts, the substance of which is as follows:

First. The Orcutts, owners of the land, gave a first mortgage to the Central Investment Company, defendant, to secure a promissory note of $1,300.

Second. Orcutts, the owners of the land, gave a second mortgage to the defendant the Central Investment Company, to secure a note of $130.

Third. Afterwards the Orcutts sold and conveyed the land to the defendant, J. Y. Morgan.

Fourth. The defendants Morgan sold and conveyed the land to the defendant Applegate.

Fifth. The defendant Applegate mortgaged back by third mortgage on the land to Morgan to secure the purchase price of $550.

Sixth. The Central Investment Company for valuable consideration assigned and transferred the first mortgage of $1,300 to Isabell W. Daggett.

Seventh. While Applegate was the owner of the land, the second mortgage became due. There was an attempted foreclosure. This is admitted to be void because of the want of service of summons upon the owner of the fee-simple title. Applegate, who being a nonresident of the state, service by publication was not complete. Under this foreclosure the land was sold to the Central Investment Company, which sale was confirmed by the court and deed executed by the sheriff and delivered to the Central Investment Company, and after this the Central Investment Company conveyed the land to plaintiff by warranty deed, subject to the mortgage held by Isabell W. Daggett, and in which deed the plaintiff assumed and agreed to pay the Daggett mortgage.

Eighth. Plaintiff thereupon went into the actual and peaceable possession of the land, and has continued in possession until the trial of this cause. It is further admitted that plaintiff was a bona fide purchaser of the land from the Central Investment Company without any notice of defect in the judicial proceeding; that he made no examination of the public record, and knew nothing of the void foreclosure proceeding.

Ninth. Plaintiff, Babcock, when the Daggett, or first, mortgage became due, paid the same to Mrs. Daggett and had it released of record without any knowledge of the defect or irregularity in the judicial proceeding, and that he paid the same in good faith, relying upon the regularity of the judicial proceeding and the deed of the sheriff, and believed in good faith that he was owner of the fee-simple title.

Tenth. After paying the Daggett mortgage he then for the first time discovered the invalidity of the foreclosure proceeding, and then instituted this proceeding as a new foreclosure, claiming to be a mortgagee in possession, and as having the right to be subrogated to the rights of the purchaser at the void foreclosure proceeding, and also the right to be subrogated to the rights of Isabell W. Daggett.

Counsel for the plaintiff sets out several assignments of error, the first three of which are:

"Said district court erred in refusing to adjudge and decree to plaintiff, F. H. Babcock, the full relief prayed for by him in said cause, and erred in denying the relief pray-

ed for by him against the defendants J. Y. Morgan and Coreine Morgan."

Second. "The district court erred in adjudging that plaintiff was not entitled to subrogation to the Daggett note and mortgage, upon the payment and discharge of same by him while in possession of said premises as a grantee of the purchaser at the judicial sale had under the foreclosure proceedings."

Third. "The court erred in rendering judgment and decree in said cause in favor of J. Y. Morgan and Coreine Morgan, and in fixing the priority of the same as first and superior to the judgment entered in favor of plaintiff against the other defendants in said cause."

We will first consider the rights of the purchaser or the grantee of a purchaser at a void judicial sale. The doctrine is announced in 37 Cyc. 455, 456, 457, as follows:

"A purchaser at a void sale to foreclose a mortgage is subrogated to all the rights and remedies of the mortgagee and can enforce them as the mortgagee could have done had the sale not been made, and the purchaser's grantee has the same rights and remedies as the purchaser."

In the case of Equitable Mortgage Co. et al. v. Gray et al., 68 Kan. 100, 74 Pac. 614, it was held by the court that a purchaser at a mortgage foreclosure sale, which was defective for lack of necessary party defendant, is entitled to all the rights of a mortgagee in possession. This was a case where the mortgagee was in the penitentiary under sentence of death, and was not served with process. Decree of foreclosure was entered, sale had and confirmed, and the purchasers went into possession and paid the taxes thereon for a number of years. When later the mortgagor, having been pardoned, instituted an ejectment suit for possession, the court said:

"One who assumes possession of land under color of foreclosure proceedings believed by him to be valid, however defective they may be in fact, cannot be dispossessed in an action of ejectment by the mortgagor before payment of the mortgage debt. * * * The Equitable Securities Company, having bought the land at the sheriff's sale under the decree of foreclosure, and entered thereon peaceably, was entitled to all the rights of a mortgagee in possession. A sale under the decree operated as an assignment to the purchaser of the interest of the mortgagee in the premises"—citing Stark et al. v. Brown, 12 Wis. 572, 78 Am. Dec. 762; Brobst v. Brock, 10 Wall. 519, 19 L. Ed. 1002; Sheldon on Subrogation, sec. 31; Bryan v. Brasius, 162 U. S. 415, 16 Sup. Ct. 803, 40 L. Ed. 1022.

In the case of Capell v. Dill et al., 82 Kan. 652, 109 Pac. 286, a foreclosure was begun by the assignee of a mortgage and publication service had against the mortgagor. The mortgagor was dead. Judgment was entered, the land subsequently sold, and was purchased by one Rice. Rice sold the land, and his grantee paid the taxes, and then conveyed to Capell. In this case the court said:

"A grantee in good faith, holding possession under a sheriff's deed in foreclosure proceedings which did not divest the title of the mortgagor, is properly subrogated to the rights of the mortgagee, and considered as a mortgagee in possession.

"In the circumstances stated above, the heirs of the mortgagor will not be given a decree quieting their title against the party so held to be a mortgagee in possession, nor will they be awarded the possession, until they first satisfy the mortgage debt, although an action thereon would be barred by the statute of limitations."

The same question has been before the Supreme Court of our state in the case of Romig et al. v. Gillett, 10 Okla. 186, 62 Pac. 805. Gillett made his note to Romig, and mortgaged a tract of land to secure the same, and then deeded the land subject to the mortgage to Myrtle Gillett. The land was located in Garfield county, and Romig began a foreclosure suit and secured a default judgment against the Gilletts. The Gilletts lived in Kingfisher county, and had been served by publication notices; sale was had, and Romig became purchaser. Romig then sold the land to Harding. Shortly after the sale to Harding, his grantee, Gillett, owner of the fee-simple title, appeared and moved to set aside the judgment. The judgment was set aside, and Harding appealed to the Supreme Court of Oklahoma, where the judgment was affirmed. The case was then taken to the Supreme Court of the United States, and the judgment reversed. 187 U. S. 111, 23 Sup. Ct. 40, 47 L. Ed. 97. In its opinion (17 Okla. 324, 87 Pac. 325) in the litigation had thereafter, Justice Hainer used this language:

"That Harding being a grantee of the mortgagee in possession, his right and his possession could not be disturbed by the mortgagor or his grantee, Myrtle Gillett, until the mortgage debt and interest and all proper charges were fully paid. In other words, the maxim that 'he who seeks equity must do equity,' applies, and before the rights of Harding could be determined, and his possession disturbed, it devolved upon Myrtle Gillett, the grantee, of the mortgagor, to do full equity."

In the syllabus the court announced the law as following:

"A mortgagee who enters into possession peaceably, as purchaser under foreclosure

proceedings, cannot be dispossessed by the mortgagor or his grantees so long as the mortgage remains unsatisfied."

The second paragraph of the syllabus is as follows:

"Under the facts in this case H., as the grantee of R., the purchaser at the foreclosure sale, stands in the shoes of the mortgagee, and his right to relief must be measured and determined by the well-recognized principles of equity."

We think that the above case is squarely in point, and clearly points out the rights of all the parties to suit at bar, and that the right of redemption in defendants, to redeem the land from the indebtedness held against it by Babcock, a mortgagee in possession, with the right to have credited on said indebtedness the rentals received by Babcock while in possession.

In the case of Harding v. Gillett et al., 25 Okla. 199, 107 Pac. 665, the Supreme Court of our state, speaking through Mr. Justice Hayes, and again reviewing the facts in the above case, reannounced the conclusion of the court to the same effect as to the rights of a grantee of a purchaser at a void judicial sale.

In the case of Olson v. Peterson, 88 Kan. 350, 128 Pac. 191, Oliver Olson and his wife were made joint grantees in a deed, the land formerly belonging to Oliver Olson, and a mortgage had been executed against it. He conveyed the land to defraud creditors, and, having settled with them, the land was reconveyed to him and his wife jointly. The wife died, and two years later Olson paid the mortgage, and then placed a new mortgage on the land, after which he conveyed the land to Peterson, subject to the last mortgage, and Peterson assuming to pay the same. The heirs of Mrs. Olson brought suit in ejectment, and the court held that Peterson was entitled to be subrogated to the rights of the mortgagee named in the mortgage that had been discharged by Olson; the court using this language:

"By his conveyance to Peterson the latter became the assignee of whatever rights Oliver Olson had to subrogation."

And, after citing Sheldon on Subrogation, quoted therefrom as follows:

" 'It is merely necessary that his payment should have been made in good faith for the protection of an interest which he believed himself to have in the estate, and in dis charge of a burden actually resting upon the property, so that his payment has increased the value of the estate for the benefit of those who turn out subsequently to be entitled to the title.' Whatever rights Oliver would have had to reimbursement from the

appellees passed to Peterson. Applying the foregoing principles of equity to the facts, it follows that the heirs of Alma Olson, who subsequently turn out to be entitled to a portion of the lands, the value of which was increased by the payment made by the assignee of appellants, should reimburse the latter to the extent of their proportionate shares in the lands. The tendency of courts everywhere is to extend, rather than to restrict, the principle of subrogation, modifying it to meet the circumstances of each case where in accordance with recognized maxims it should be allowed in equity and good conscience." .

In the case of Wagg v. Herbert et al., 19 Okla. 525, 92 Pac. 250, the court said:

"Equitable principles must control a full and complete settlement of the rights of the parties to this action. Wagg is entitled to be paid for the principal indebtedness, together with the interest at the rate specified in the note and mortgage, for all taxes, assessments, and other proper charges and expenses necessary for the management and protection of the estate, and he is responsible to Mrs. Herbert for rents and profits to be applied upon the indebtedness. And the rights of all subsequent purchasers in good faith for a valuable consideration, without notice of the rights of defendants in error, should be fully protected according to recognized principles of equity"—citing authorities.

The Supreme Court of our state again in the case of Harrill v. Weer, 26 Okla. 313, 109 Pac. 539, in an opinion of Justice Hayes, said:

"It is a well-settled rule that the purchaser at a void foreclosure sale under a mortgage becomes subrogated to all the rights of the mortgagee, and is to be regarded and treated as an equitable assignee of the security to secure him for the purchase money paid by him and applied upon the payment of the mortgagee, and is to be regarded and treated as an equitable assignee of the security to secure him for the purchase money paid by him and applied upon the payment of the mortgagor's debt."

See, also, Kleburg, Void Judicial and Execution Sales, par. 478, and authorities there cited: Bryan v. Kales, 162 U. S. 412, 16 Sup. Ct. 802, 40 L. Ed. 1020.

We are of opinion from the above citations that when the Central Investment Company in good faith purchased the land at the judicial sale, though the same was void, without notice, of any defects in the judicial proceeding, and afterwards conveyed the land to the plaintiff in error, who in good faith and without any notice of such irregularities purchased the same, and then took possession of the land, he was the equitable assignee of the Central Investment Company, the

mortgagee, and was thereby a mortgagee in possession and was subrogated to all the rights and equities of the Central Investment Company.

We next consider the question as to whether or not the plaintiff in error became subrogated to the rights of Isabell W. Daggett, the holder and owner of the first mortgage for $1,300, which plaintiff paid off after the same matured and while in possession of the land under a purchase from the Central Investment Company, and without any notice of any defect in his title.

It is clear that the plaintiff paid off this mortgage and redeemed the land therefrom in good faith, believing that he was the owner of the fee-simple title, and that it was done by him for the purpose of protecting his rights as owner of the land.

Section 3839, Rev. Laws 1910, provides:

"Every person having an interest in property subject to a lien, has the right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

It is contended by the defendants that the plaintiff cannot become subrogated to the rights of Isabell W. Daggett for the reason that he is a volunteer in the payment of said note and mortgage to Mrs. Daggett, and therefore cannot be subrogated to her rights, and counsel in his brief cites the case of Kahn v. McConnell et al., 37 Okla. 219, 131 Pac. 682, 47 L. R. A. (N. S.) 1189; but this case is distinguishable from the case under consideration for the reason that in said case McConnell was the owner of the land and there was a first mortgage on it to secure an indebtedness to the First National Bank of Roff. The defendant Wright approached McConnell to buy the land, and McConnell referred him to the bank, stating that if he could satisfy the bank he would sell him the land. Wright then went to the bank and paid off the indebtedness of McConnell, took up his notes, and had the bank cancel the mortgage lien upon the record. He delivered the notes and mortgage duly canceled to McConnell, and McConnell then sold him the land.

It afterwards developed that there was a second lien on the land, which Wright did not know of, and in a suit to foreclose the second lien, Wright contended that he should be subrogated to the rights of the bank, and the court properly held that Wright was a volunteer, and could not become subrogated to the rights of the bank so as to defeat the second lien. It will be seen from this case that at the time Wright paid off the indebt-edness to the bank and had the lien canceled he had no interest whatever in the property, but was merely paying the same so that he might afterwards become the purchaser; consequently he does not come within the provisions of the statute above quoted. Now, in the case under consideration, Babcock unquestionably had an interest in the land at the time that he paid the Daggett mortgage, as he had already purchased what he supposed was a fee-simple title, and was then immediately subrogated to the rights of the Central Investment Company, and consequently he does come squarely under the provision of the above statute. Again it is contended by counsel for defendants that because Babcock assumed the payment of the Daggett mortgage in the deed which he took from the Central Investment Company, that it thereby became his obligation, and for this reason he cannot be subrogated. In this contention we cannot agree. It is true he assumed to pay the mortgage, and it became his personal liability, still this assumption was made to relieve the Central Investment Company, and to protect the title which he thought he owned. The owner of the land had received this money and mortgaged the land to secure the payment. The subsequent purchasers bought subject to this mortgage, and if the contention of defendants is true, then Applegate, the owner of the title, could dispossess plaintiff and avoid the payment of this very mortgage which he bought subject to. This equity will not permit. Equitable Mortg. Co. et al. v. Gray, 68 Kan. 100, 74 Pac. 614, and cases there cited; also Olson v. Peterson, 88 Kan. 350, 128 Pac. 192.

It cannot be successfully contended that while the plaintiff was in the actual possession of the land, under the circumstances as shown in this case, the owner of the title, Applegate, could successfully maintain an action against him for possession of the land, until he had paid off and satisfied the Daggett mortgage, and we see no reason why the rights of Morgan should be any higher than the owner of the title. Morgan accepted the third mortgage with a full understanding at the time that there were two mortgages ahead of his, and he is in the same position now that he would have been if the land had not been sold at the void sale, therefore he is not injured in any way whatever, and cannot be heard to complain because the plaintiff should be subrogated to the rights of Mrs. Daggett. It is but simple justice and good conscience that the plaintiff should now stand in the shoes of Isabell W. Daggett, and that he be held as an equitable assignee of the interest of Isabell W. Daggett,

and that he be declared a mortgagee in possession and subrogated to all the rights and equities of Isabell W. Daggett. We are of opinion, however, that the plaintiff will not be entitled to charge against this land the costs and attorney fees in the previous foreclosure proceeding, but that he is entitled to charge against the land the full amount due the Central Investment Company at this time, together with all taxes paid by the Central Investment Company on this land and whatever taxes have been paid by the plaintiff, if any, and also the full amount due under the Daggett note and mortgage, and deduct therefrom the reasonable rental value of the land, and that his liens be foreclosed to satisfy same.

The judgment of the lower court is reversed, and the court below is directed to set aside its judgment rendered in this cause, and to enter a decree in conformity with this opinion.

By the Court: It is so ordered.