## S. R. WAGG v. MARY B. HERBERT *et al.*

(Filed October 12, 1907.)

(92 Pac. 250.)

1. **MORTGAGES—Absolute Deed as Mortgage—Extraneous Evidence.** When the question before a court of equity is whether a deed which purports upon its face to be an absolute deed was in reality a deed or a mortgage, extraneous evidence is admissible to show that it was only a mortgage.

2. **SAME—Substance and Effect of Instrument.** Where a transaction was in substance and effect a loan of money upon the security of a farm, a court of equity is bound to look through the forms in which the contrivance of the lender has enveloped it and declare the conveyance of the land to be a mortgage.

3. **SAME—Fraud and Undue Influence.** A mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee, where the transaction is fair, honest, and without fraud, and where no undue influence or unconscionable advantage has been taken of his position by the mortgagee; but to insist on what was really a mortgage as a sale is in equity a fraud which cannot be successfully practiced under the shelter of any written papers, however precise and complete they may appear to be.

4. **SAME.** Where a mortgagee purchases the premises of the mortgagor, and the evidence discloses that fraud was committed and undue influence was used, and where the transaction shows that it was unfair and an unconscionable advantage has been taken by virtue of the position of the mortgagee, a court of equity will decree a deed, which is absolute on its face, to be a mortgage.

5. **SAME.** A sale of property to a mortgagee is to be scrutinized to see whether any undue advantage has been taken of the mortgagor, and especially is this necessary when the mortgagee in the inception and throughout the whole conduct of the business has shown himself ready and skillful to take advantage of the necessities of the borrower.

6. **SAME—Adequacy of Consideration.** In determining the question whether the transaction was a sale or a mortgage, it is of great importance to inquire whether the consideration was adequate to induce a sale.

7. **SAME—Laches—Acquiescence.** Under the circumstances of this case, the plaintiff was not guilty of such laches or acquiescence

as would preclude her from asserting her equitable rights under the well-settled principles of equity jurisprudence.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before Jno. H. Burford, Trial Judge.*

Affirmed.

*Biddison & Eagleton,* for plaintiff in error.

*E. M. Clark* and *Wrightsman & Diggs,* for defendant in error.

### STATEMENT OF CASE.

This was a suit in equity commenced in the district court of Pawnee county, Oklahoma, on June 13, 1903, by W. H. Herbert and Mary B. Herbert against S. R. Wagg and 47 other defendants, the object and prayer of which was to cancel a deed, absolute on its face, executed by Mary B. Herbert to S. R. Wagg on May 28, 1901, and for other equitable relief, on the ground that it was obtained through fraud, oppression, and undue influence, as alleged in the plaintiffs' amended petition. In order that the issues may be clearly and fully understood in this case, we think it proper to set out the facts fully as pleaded in the amended petition and in the answer thereto by the defendant Wagg. The second amended petition, upon which this case was tried, is as follows:

"Comes now the above-named plaintiff, and, having first obtained leave of the court, files this her second amended petition and for her cause of action against the defendants herein alleges:

"That the above-named plaintiff is and at all times mentioned herein was the owner of and residing upon the west one-half of the southeast quarter of section eight, township twenty-one north, of range eight east of the I. M., in Pawnee county, Oklahoma Territory; and has so resided with her husband until his decease, and with her two minor children at all times since the title thereto was acquired under the homestead laws of the United States as a home, and claiming the same as a home under and by virtue of the laws of the United States and of the homestead laws of the territory of Oklahoma.

"That upon the 26th day of October, 1898, the above-named plaintiff with her husband, W. H. Herbert, who is now deceased,

borrowed from the above-named defendant, S. R. Wagg, $900.00 and executed therefor a certain promissory note in the sum of $1,000.00, a copy of which is hereto attached marked 'Exhibit A' and made a part hereof. And to secure the payment of said note to the said S. R. Wagg, executed their certain mortgage upon the real estate above described, a copy of which is attached hereto marked 'Exhibit B' and made a part hereof. And as further security for the payment of said indebtedness signed their certain instrument in the form of a warranty deed, a copy of which is hereto attached marked 'Exhibit C' and made a part hereof, and placed said 'Exhibit C' in the Bank of Cleveland, to be by it held in accordance with the terms expressed in a certain writing, delivered by said defendant S. R. Wagg to this plaintiff and her said husband, as an inducement for the signing of said 'Exhibit C' and containing the terms and conditions under which the said 'Exhibit C' was signed and the conditions under which it should be delivered to the said defendant, S. R. Wagg, a copy of which is hereto attached marked 'Exhibit D' and made a part hereof.

"That in the taking possession of said 'Exhibit D' and said real estate, and in the negotiations looking to the redemption of said real estate from the said mortgage as embraced in all of said Exhibits A, B, C, and D, all as herein alleged; the said Leory M. Brown acted with, for and in behalf of the said defendant S. R. Wagg as his agent with full authority as such agent, and did in his capacity as such agent help, aid, and abet the said S. R. Wagg in the doing of the various things herein alleged to have been wrongfully done by the said S. R. Wagg.

"This plaintiff further alleges that on or about the 26th day of December, 1899, without the knowledge or consent of either this plaintiff or her husband, and in violation of the conditions expressed in said 'Exhibit D,' and to defraud and wrong this plaintiff and her said husband, and in violation of their rights in the premises, and in violation of the duties of said S. R. Wagg in the premises under the relationship existing between this said plaintiff and her husband and the said S. R. Wagg, the said S. R. Wagg did obtain possession of the said 'Exhibit C' and on December 26, 1899, did cause the same to be placed of record in the office of the register of deeds in and for Pawnee county, Oklahoma Territory, and recorded in book one of deeds at page 329; and thereby in particular did violate the conditions exressed in 'Exhibit D' in

this, to-wit: That the said deed was not under any circumstances to be delivered to the said S. R. Wagg until two years and a half after the date thereof. Which time had not expired at the time of the taking of the same by the said S. R. Wagg. And thereby in particular did violate the rights of this plaintiff in this: That the said deed and said 'Exhibit D' were but parts of the mortgage transaction and conveyed no title. And that the said S. R. Wagg obtained possession of the same for the unlawful purpose of, and did use the same for the unlawful purpose of setting up and claiming title thereunder adverse to this said plaintiff and her said husband, and did take possession by force and fraud of said real estate as herein alleged, and did thereby oppress this plaintiff and by said means fraudulently, wrongfully, and by the use of said undue advantage, and the taking advantage of the conditions of this plaintiff, and of the position which he occupied by reason of the relations existing as hereinbefore alleged at a time when this plaintiff was financially embarrassed by reason of the facts herein alleged; and by reason of the financial embarrassment of this plaintiff, and in pursuance of the advantage of said S. R. Wagg and the disadvantage of this plaintiff, said S. R. Wagg did in the month of February, 1900, notify this plaintiff and her said husband that the said deed was recorded, and that this plaintiff and her said husband no longer owned said land, and that at all times thereafter did persistently, wrongfully, and continually claim to this plaintiff and her said husband, and to the public, that he the said S. R. Wagg was the absolute owner of said real estate without the right of redemption being in this plaintiff and her said husband. And in furtherance thereof, the said S. R. Wagg did on or about the 14th day of May, 1900, come to the said premises and take possession by force, and over the objection and protest of this plaintiff, and in the absence of her said husband, of the major portion of said premises, and thereby deprived this said plaintiff and her family of the enjoyment thereof, the means of livelihood, and of complying with the contracts referred to as exhibits herein; which could and would have been done with the rents and profits thereof.

"And upon this plaintiff soliciting permission to redeem from said mortgage, the said S. R. Wagg refused to accept from this plaintiff the amount due upon the said note and mortgage, and attempted to exact from this plaintiff the sum of $400.00 in ex-

cess of what was due on said mortgage according to the terms thereof, and before the time when said S. R. Wagg would have been authorized to take possession of said 'Exhibit E.' And in furtherance of his said design to wrong and defraud, the said S. R. Wagg refused to accept even the said excess of $400.00, under the fraudulent, wrongful and oppressive and unjust claim of him the said S. R. Wagg being the absolute owner thereof, and by reason of the said fraud, oppression and over-persuasion, undue influence and taking advantage of his position and the relationship of parties as herein set forth, and the disadvantage under which this plaintiff was placed by reason of the acts herein complained of, the said S. R. Wagg, for a grossly inadequate consideration, procured from this plaintiff, who was at the time inexperienced in transacting business, and during the absence of her said husband, a purported warranty deed to all of said real estate, a copy of which deed is hereto attached, marked 'Exhibit E' and made a part hereof. As a consideration therefor, the said S. R. Wagg did give a deed to this plaintiff to twenty-five acres of said real estate, which was at the time this plaintiff's own property, a copy of which deed is hereto attached, marked 'Exhibit F', and made a part hereof.

"That the only consideration received by this plaintiff for the said purported deed marked 'Exhibit E' was a relinquishment of the said mortgage herein referred to as 'Exhibit B,' and ever since which time the said defendant S. R. Wagg and his assigns have retained and held the possession to the north 55 acres of said real estate, which is not included in 'Exhibit F', the same being, substantially the same portion of said real estate which said S. R. Wagg by force and violence took and at all time thereafter has held from the possession of this plaintiff as hereinbefore alleged, on or about the 14th day of May, 1900, and since which time the said S. R. Wagg has had, received, and retained the rents and profits thereof. And for the purpose of further clouding said transaction had said 'Exhibit C' again recorded on May 6, 1901, in book one, page 581, in the office of the register of deeds of said county.

"That the said real estate was at the time of the giving of said 'Exhibit E' of the fair and reasonable value of $100.00 per acre. And that had it not been for the misconduct, wrongs, oppression, fraud, deceit, undue influence, over persuasion, and the

Vol. 19—34

advantage of the position occupied by reason of the relationship of parties as herein set forth, and by reason of the financial depressed condition of this plaintiff by reason thereof, the said deed referred to herein as 'Exhibit E' would never have been executed.

"This plaintiff further alleges that the defendants herein are by reason of the wrongs herein set forth, now in the actual possession of all of said eighty acres of land excepting the twenty-five acres referred to in said 'Exhibit F.' This plaintiff further alleges that she has an equitable estate in all of said eighty acres, and is in equity the owner thereof, subject to the rights of said S. R. Wagg as mortgagee, and is entitled to the immediate possession thereof, and that the defendants unlawfully keep this plaintiff out of the possession of the north fifty-five acres thereof, not included in said 'Exhibit F.'

"That this plaintiff hereby tenders and brings into court for the use and benefit of said defendants herein the full consideration represented by the said note and mortgage together with the interest and taxes according to the terms thereof, and stands ready and willing to pay the same on the order of the court.

"Plaintiff further alleges that on the 14th day of May, 1900, the defendant S. R. Wagg took possession of all of said eighty acres of land excepting the house occupied by plaintiff and a small piece of ground upon which said house was located and the curtailages thereof, and that the defendant has held, kept, and caused to be kept from this plaintiff the possession of said tract of land from that time until the present, and that the value of the use and occupation of said land so held by the said defendant and retained from plaintiff has been and is the sum of $800.00.

"Plaintiff further alleges that subsequent to the delivery by the plaintiff to the defendant S. R. Wagg of the deed of which 'Exhibit E' is a copy, the defendant S. R. Wagg made and executed a plat of the fifty-five acres of land not embraced in said 'Exhibit E', platting the same into lots, blocks, streets, and alleys for townsite purposes, and named the said plat 'Wagg's Addition to the Town of Cleveland, Pawnee County, Oklahoma Territory,' and did subsequently and before this action was brought proceed to sell some of said lots to innocent purchasers, the exact lots and amounts received for which are not known to the plaintiff, but which amounts to a large sum of money. And plaintiff alleges that the defendant S. R. Wagg has not accounted to the plaintiff for said

moneys, but has converted the same to his own use; and that an accounting is necessary between the said plaintiff and defendant to determine the amount which the said defendant has so unlawfully received and converted to his own use.

"That the defendants herein other than the said S. R. Wagg claim to have some interest in the real estate involved herein adverse to this plaintiff, the exact nature of which is unknown to this plaintiff, but that the same is subordinate and inferior to the rights of this plaintiff herein.

"Wherefore plaintiff prays judgment that the said deed referred to as 'Exhibit E' be canceled and held for naught; and that it be adjudged and decreed by this court that the deed referred to as 'Exhibit C' be held to be a part and parcel of the said mortgage 'Exhibit B'. And that the court determine the amount due as principal and interest on said mortgage from the plaintiff to the defendant. And that the court proceed to determine the amount in crops, produce, rents, use and occupation which the said S. R. Wagg, defendant herein, has taken or caused to be taken from this plaintiff and from said eighty acres of land or any part thereof; and that the same be charged to said S. R. Wagg and credited to this plaintiff.

"And that the court, after the trial of the issues between this plaintiff and the other defendants herein, also take an accounting and determine the amount of money which the said S. R. Wagg has received or should have received in money, notes, and property for the sale or trade of lots to innocent purchasers without notice of the rights of this plaintiff after the same shall have been determined by this court under the issues formed or to be formed between plaintiff and defendants herein, upon the portion platted by him of the said eighty acres; that is to say, of the fifty-five acres of land; and that the same be charged to the said S. R. Wagg, defendant herein, and, after the defendant S. R. Wagg is given credit for the balance due on said note and mortgage and taxes, that this plaintiff be given judgment against the said S. R. Wagg for the balance due this plaintiff on said account.

"And this plaintiff further prays judgment that she be restored to the possession of all the remainder of said land, and that the defendant S. R. Wagg and all persons holding by, through, or under him and against all the defendants herein and their alleged transferrees, excepting such as shall by this court be de-

creed to be innocent purchasers thereof in good faith and for a good and sufficient consideration. And that all other claims or pretended claims by any of the defendants herein be barred and held for naught; and that this plaintiff be granted such other and further relief as the court may deem legal and just; and that this plaintiff recover her costs in this action."

'Exhibit A', which is made a part of the amended petition, is as follows:

"$1,000.00.                    Cleveland, O. T., Oct. 24, 1898.

"Five years without grace, after date, for value received, we as principals promise to pay to the order of S. R. Wagg, one thousand and no-100 Dollars, at the Bank of Cleveland, and interest thereon at the rate of ten per cent. per annum from October 21, 1899, payable annually in advance and if not paid when due to bear 10 per cent. interest from date. The makers and endorsers severally waive presentment of this note for payment, and protest, and notice of non-payment, and agree that the time for payment of this note may be extended from time to time without notice and that no such extension shall impair or change the liability of any of these parties hereto. If suit be instituted we agree that judgment be rendered for ten per cent., additional as attorney's fees.

"[Signed] MARY B. HERBERT,
"W. H. HERBERT."

'Exhibit B' reads as follows:

"No. 1793. Mortgage from W. H. Herbert and Mary B. Herbert to S. R. Wagg.

"Know all men, that on this 24th day of October, 1898, Mary B. Herbert and W. H. Herbert, husband and wife, both of Cleveland, O. T., parties of the first part, in consideration of ($1,000.00) one thousand dollars, in hand paid by S. R. Wagg, party of the second part, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey to said party of the second part, his heirs and assigns forever, the following real estate lying and being in the county of Pawnee, and territory of Oklahoma, and known and described as follows to-wit: The same being the west half of the southeast quarter (S. E. ¼) of section eight (8), in township twenty-one (21) north, of range eight (8) east of the Indian Meridian, the same being eighty acres of land adjacent to

and adjoining the town of Cleveland, O. T. For further description the farm is bounded on the north by Joe Box's farm, on the east by the town of Cleveland, on the south by the Lowry claim, and on the west of C. J. Phenis farm.

"Appraisement is hereby waived in any foreclosure proceeding together with all the privileges and appurtenances to the same belonging.

"To have and to hold the same to the said party of the second part his heirs and assigns forever, and the said Mary B. Herbert and W. H. Herbert, husband and wife, party of the first part, hereby covenant that they are well and truly seized of a good and perfect title to the premises above conveyed in the law, in fee simple, and have good right and lawful authority to convey the same, and the title so conveyed is clear, free and unincumbered, and that they will warrant and forever defend the same, to the party of the second part, his heirs and assigns against all claims whatsoever.

"Provided always, and these presents are upon this express condition that if the said party of the first part, their heirs, executors and administrators, shall pay or cause to be paid to the party of the second part, his heirs, executors, administrators or assigns, the just and full sum of one thousand dollars ($1,000.00) five years from date hereof, with interest thereon from October 21, 1898, until paid at the rate of ten per cent. per annum, the same to be paid annually in advance, and if the interest is not paid when due the same is to bear interest the same as the principal, according to the provisions of one promissory note, bearing even date herewith, executed by the said Mary B. Herbert and W. H. Herbert, husband and wife, parties of the first part to the said party of the second part, and shall moreover pay annually to the proper officers all taxes which shall be assessed on the said real estate and shall deliver or exhibit receipts therefor to the party of the second part, his heirs and assigns on or before the first day of May next after such taxes shall have become due and payable; and shall insure and keep insured the buildings thereon against loss by fire in the sum of two hundred dollars or over, in insurance companies to be approved by party of the second part, his heirs or assigns, and the policy or policies of such insurance assigned as collateral thereto, and on the default thereof it shall be lawful for the said party of the second part his heirs or assigns to effect the

insurances and the premium and premiums and other legal expenses, fees, costs, and charges paid for the effecting of the same, together with interest thereon at the rate of ten per cent. per annum, shall be a lien upon the said mortgaged premises, added to the amount of the said one thousand dollars and secured by these presents until the payment of said promissory note, then these presents shall be null and void. But in the case of non-payment of any sum of money (either of principal, interest, or taxes) at the time or times when the same shall become due, or to insure and keep the policies assigned agreeably to the conditions of these presents or of the aforesaid note or of any part thereof, or in case of such failure to deliver such receipts, as above provided, or in case of failure on the part of said party of the first part to keep or perform any other agreement, stipulation or condition herein contained, then in such case the whole amount of said principal sum shall at the option of the said party of the second part, his representatives or assigns, be deemed to have become due and the same, with interest thereon at the rate aforesaid be collectible in a suit at law, or by foreclosure of this mortgage, in the same manner as if the whole of said principal sum shall have been made payable at the time when such failure shall occur as aforesaid; and it shall be lawful in such, for said party of the second part, his heirs, executors, administrators or assigns, to grant, sell and convey said real estate with the appurtenances thereunto belonging, at public auction on vendue, and on such sale, to make and execute to the purchaser or purchasers his, her or their assigns forever, good and sufficient deed of conveyance in the law pursuant to the statutes in such cases made and provided; and out of the moneys raised from such sale to retain the principal and interest which shall then be due on the said promissory note together with the costs and charges, rendering the surplus moneys, if any there be, to the said party of the first part, their heirs or administrators, after deducting the costs of such vendue as aforesaid, and in the case of the foreclosure of this mortgage, the said party of the first part for themselves, their representatives or assigns, do covenant and agree that they will pay the said party of the second part, his representatives or assigns in addition to the taxable costs, in the foreclosure suit, sixty dollars as solicitor's fees.

"In witness whereof the party of the first part have hereunto set their hand and seals this 24th day of October, A. D. 1898.

"Signed, sealed and delivered in the presence of W. T. Litton and G. W. Sutton.

"Mary B. Herbert,
"W. H. Herbert.

"Territory of Oklahoma, Pawnee County, ss:

"On this 26th day of October, A. D. 1898, personally came before me Mary B. Herbert and W. H. Herbert, known to me to be husband and wife, and to me known to be persons who executed the foregoing mortgage upon land known to be the homestead of the grantors, and acknowledged that they executed the same freely and voluntarily for the uses and purposes therein mentioned.

"[Seal]                    W. T. Litton, Notary Public.

"My commission expires Jan. 30, 1899.

"Territory of Oklahoma, County of Pawnee, ss.:

"Received for record this 14th day of November, A. D. 1898 at 8:05 P. M. and recorded in vol. (1) of mortgages in page 173 Fee $1.55

"[Seal]                    J. J. Corbut, Register of Deeds.

"The original of this mortgage was accompanied by a plat of the land.

"J. J. Corbut, Register of Deeds."

'Exhibit C' is as follows:

"This deed is left in the bank of Cleveland in escrow as security of a note and mtg., given by Mary B. Herbert to S. R. Wagg of Appleton, Wis.  W. T. Litton, Csh.

"Know all men by these presents that we, Mary B. Herbert, and her husband, W. H. Herbert, for and in consideration of the sum of one thousand ($1000.00) dollars do hereby sell and convey to S. R. Wagg, the following real property situated in Pawnee county, southeast quarter of ·section eight (8), township twenty-one (21) north, of range eight (8) east of the I. M., more particularly described and bounded as follows, to-wit:  On the north by the Joe Box place, on the east by the town of Cleveland, ·on the south by the Lowery place, and on the west by the C. J. Phenis place, with all its appurtenances and warrant the title to same.

"Signed and delivered this the 24th day of Nov. 1898.

"Mary B. Herbert,
"W. H. Herbert.

"Territory of Oklahoma, Pawnee County, ss:

"Before me, W. T. Litton, notary public in and for the above

named county and territory, on the 24th day of October, 1898, personally appeared Mary B. Herbert and husband and executed the above conveyance of land, to me known to be the homestead of the grantors and each for themselves acknowledged the execution thereof to be their free and voluntary act for the purposes named.

"Witness my hand and official seal the date above written.

"[Seal] W. L. Litton, Notary.

"My commission expires Jan. 30, 1899.

"This deed is given to be held in escrow as additional security to grantee for a loan of $1000.00 this day loaned to the grantors and for which they have this day given the grantee a mortgage on the same land.

"Territory of Oklahoma,

"Pawnee County, Canceled

"Fee $1.00.

"This instrument was filed 26th day of December, 1899 at 8 A. M. and duly recorded in book 1 of Deeds, page 329.

"T. M. Broaddus."

'Exhibit D' is as follows:

"September 25, 1898.

"W. H. Herbert, Cleveland, Oklahoma.

"My dear Sir:

"Yours of the 15th to hand and it's satisfactory as a fair declaration to do and I have begun to see something of the drift of things. If you was in Wisconsin I would not hesitate a moment. I have no love for such men as you describe, & I would not. I have been made to hesitate on acc't of the possible future contingencies. I wrote Mr. Drown about a deed held in escrow against the possible interference or injunction proceedings that scheming men and lawyers trump up. I will bring the matter to a focus at once and make the loan or quit & call it off. You execute a warrantee deed to me to be placed in escrow, and held by the bank of Cleveland or A. A. Drown, in trust, for the fulfillment of the terms of the mortgage. In case you fail to fulfill the terms and are in default of interest or other terms for six months then the deed is to be delivered to me or my order. The mortgage is for $1000.00. I will deduct the first year's interest $100.00, send $900.00 to the bank with instructions. This pays first year's interest, second year's interest is not due until the end of the second year and six months grace on the end of this makes a full 2½ yrs. before you

allow or I can ask for the deed in case of default of contract. I do this solely in the interest of protecting myself against injunctional and interference proceedings from interlopers and blackmailers—in case such an unpleasant things as foreclosure proceedings should ever be necessary. I do not expect such a thing to occur if I did no loan would be made, but I am now looking to the extreme of the case and its easiest protection for me. You can ask Mr. Drown how I deal with men. I never knowing distress a man, & am not inclined that way, but want contracts lived up to. The papers you executed have not arrived here as yet to my knowledge. They will be all right when complete and I have examined them and all that will be necessary to execute the deed in connection with them and place them in hands of trustee as indiacted above and for the purposes named. I trust this will meet your needs. On execution of papers you can have money. I shall be absent from home for ten days.

"Yours,

"S. R. WAGG."

To this amended petition the defendant, S. R. Wagg, filed the following answer:

"First: Answering plaintiffs second amended petition herein, the defendant S. R. Wagg denies each and every material allegation therein, which is not herein explicitly admitted.

"Second. This defendant admits the execution of each of the written instruments copies of which are attached to said second amended petition, and marked respectively Exhibit A, B, C, D, and E, but this defendant denies that said 'Exhibit D' contains the terms and conditions of the escrow of the deed marked 'Exhibit C' and further denies that either of the endorsements as to the purpose of the execution of 'Exhibit C' were endorsed thereon at the time of the execution thereof or that they form any part of said instrument.

"Third. This defendant specially denies all that allegation of said second amended petition, which reads as follows: 'That in the taking possession of said 'Exhibit D' and the said real estate in the negotiations looking to the redemption of said real estate from the said mortgage as embraced in all of said exhibits A, B, C, and D, all as herein alleged; that said Leroy M. Drown, acted with, for and in behalf of the said defendant S. R. Wagg, as his agent

with full authority as such agent, and did in his capacity as such agent help, aid, and abet the said S. R. Wagg in the doing of various things herein alleged to have been wrongfully done by the said S. R. Wagg.'

"Fourth. This defendant admits that subsequent to the delivery by the plaintiff to the defendant S. R. Wagg, of the deed of which 'Exhibit E' is a copy, the defendant S. R. Wagg made and executed a plat of the fifty-five acres of land not embraced in said 'Exhibit E' platting the same into lots, blocks, streets, and alleys for townsite purposes, and named said plat 'Wagg's Addition to the Town of Cleveland, Pawnee County, Oklahoma Territory,' and did subsequently and before this action was brought, proceed to sell some of these lots to innocent purchasers.

"(2) For a further and second defense to plaintiff's second amended petition, this defendant alleges that all the admissions and denials of the first court are true, and they are hereby referred to and made a part of this defense as though herein fully set out.

"This defendant further alleges: That at the time he demanded and took from escrow the warranty deed, a copy whereof is attached to plaintiff's petition, marked 'Exhibit C,' the said plaintiff and her husband W. H. Herbert, were in default of payment of the interest upon the loan secured by the mortgage, a copy whereof is attached to plaintiff's petition marked 'Exhibit B' in the sum of one hundred dollars, and in addition thereto were in default of the payment of taxes for the year 1898, and the land had been advertised for sale for the taxes of 1898, and this defendant had been obliged to pay said taxes in the sum of $24.94 and accrued penalty and costs thereon in the sum of $3.86 in order to protect his aforesaid mortgage, and the said plaintiffs were wholly unable and unwilling to refund and repay said taxes and penalty or to pay said interest. That for these reasons the said defendant S. R. Wagg took the said deed from escrow and filed the same for record as an additional security for said loan and additional advances, and after placing said deed of record this defendant advised the said plaintiffs that they might still redeem the said lands from the said deed and mortgage, and repeatedly requested them to do so, and advised them by letter and otherwise that they might redeem said lands and that he would be willing to accept the payment of interest and additional advances and carry the loan according to its original terms, but said plaintiffs at all times failed to

pay any part of said indebtedness and advances, and in May, 1900, at the request of the said plaintiffs, made through W. L. Eagleton then and there their agent and duly authorized in that behalf, this defendant extended the time for payment of said advances and interest until October, 1900, upon the express agreement that this defendant should have the hay crop growing upon said lands to put against and apply upon said advances, taxes, and interest; this defendant in the meantime having paid an additional year's taxes upon said property in the additional sum of $33.00 and penalty in the sum of $1.31. That in pursuance to said agreement, whereby said payments were extended until October 1900, this defendant did take a portion of the hay crop from said premises for the year 1900, and apply the same upon said advancements. Said hay crop was of the value of $20.00 and not more. This defendant never at any time took possession of any portion of said premises prior to the execution and delivery of the said deed mentioned in plaintiff's petition and described therein as 'Exhibit E.'

"That after the expiration of the extension of time aforesaid, until October, 1900, the said plaintiffs continually requested this defendant to further extend the time of payment and not foreclose upon said premises, and this defendant during all said times was advising the said plaintiffs that they might redeem said lands from said indebtedness and mortgage and deed, and that this defendant would accept the payment of the entire indebtedness of the payment of the advances and accrued interest and continue the loan, but these plaintiffs were during all of said times unwilling to make any payments and were unwilling to keep up the taxes on said premises and to pay the same, as they were continually accruing, so that there had accrued as taxes for the year 1900 the sum of $26.34 with $1.36 as additional penalty thereon, which this defendant had paid in order to protect his aforesaid mortgage. In the meantime there had accrued as additional interest due upon the 24th day of October, 1900, the sum of one hundred dollars. No part of said original indebtedness evidenced by said note nor any of the interest had ever been paid, nor had any of the aforesaid advances been refunded, and this defendant had been to large expenses in protecting his aforesaid interest and the lien of said mortgage so that in the winter of 1900-1901, and in the early spring of 1901, the plaintiffs in writing requested this defendant to consent to accept a portion of the said lands in satisfaction of

their aforesaid indebtedness to him. The said plaintiffs being at said time fully advised and knowing that the said mortgage and deed constituted but a mortgage and lien upon said premises, for the aforesaid indebtedness. This defendant at that time believed the said lands to be worth but little more than the amount due upon said indebtedness, and said plaintiffs offered to convey one-half of said lands in satisfaction of said indebtedness, but this defendant was unwilling to accept the same as he believed one-half of the lands to be worth much less than the amount of the indebtedness, but upon the repeated solicitation of said plaintiffs this defendant finally consented to settle the said indebtedness by taking a conveyance of said lands and re-conveying twenty-five acres of said tract to the plaintiff, Mrs. Mary B. Herbert, the said agreement being entered into by this defendant at the solicitations of these plaintiffs, and as an accommodation to plaintiffs to save them of the expense of a foreclosure of said mortgage and the entire loss of said lands, and in said agreement the said defendant allowed for the said fifty-five acres retained by him more than its value at that time, and said transaction was entirely without oppression upon the part of this defendant and without any undue influence upon the part of the defendant. And in entire good faith this defendant canceled the securities and all the indebtedness of the said plaintiffs to the said defendant. Said agreement was executed and carried out by the necessary conveyances, copies of which are attached to plaintiff's petition, and marked respectively 'Exhibits E & F,' and that to induce this defendant to execute said agreement and accept said conveyance, the plaintiff Mary B. Herbert represented that she believed her husband to be dead, and that she had not heard from him for a long time and did not know of his whereabouts. Said conveyances were executed on the 28th day of May, 1901. That after the aforesaid settlement and after the execution of the aforesaid conveyance and up until the present time, the said plaintiff Mary B. Herbert has resided upon the twenty-five acres conveyed to her by said deed marked 'Exhibit F,' and had had full notice and knowledge during all of said time of all the acts of this defendant with reference to said lands, and has had full knowledge and notice of all the improvements constructed on said premises by other persons, grantees of this defendant as hereinafter stated, and has during all of said time known of the platting of said lands and of the

expenditure of large sums of money by defendant in surveying, platting, and improving said lands, and never at any time prior to the bringing of this action had she or any one in her behalf, or had either of the plaintiffs, ever expressed any dissatisfaction with the aforesaid settlement; but, subsequent to the aforesaid settlement, the said Mary B. Herbert thanked this defendant in writing for his kindness to her in making said settlement and accepting a portion of said lands in satisfaction of his said debt, and had repeatedly expressed her pleasure and satisfaction with said settlement, and did on the 6th day of July, 1901, agree in writing to procure the signature of the aforesaid W. H. Herbert to the aforesaid conveyance marked 'Exhibit E' in the event that the said W. H. Herbert should be alive, and which agreement is hereto attached marked 'Exhibit A' and made a part hereof, and the said Mary B. Herbert thereby acquiesced and affirmed the aforesaid settlement and conveyance; said agreement being executed for the purpose of quieting any question as to the title of said lands, and to enable this defendant to sell the same without question as to title, the question having been suggested that perhaps said Mary B. Herbert could not lawfully convey said lands unless joined in the deed by her husband.

"That in reliance upon the aforesaid conveyance and the affirmance thereof, and in good faith, and fully believing that he had paid adequate and full consideration for the aforesaid fifty-five acres of said land, and that plaintiff was fully satisfied therewith, this defendant took possession thereof, expended large sums of money in improving the same and laying out and surveying and platting the same as an addition to the town of Cleveland, adjoining which said lands are located, and thereafter this defendant sold large tracts and bodies of said lands to the other defendants in this cause and to their grantors, all of whom were purchasers for a valuable consideration and without notice of any claim of the said Mary B. Herbert, or either of the plaintiffs herein.

"That this defendant is still the owner of all the said fifty-five acres of land not conveyed to purchasers in good faith or for a valuable consideration and without notice of any claim by the said plaintiffs or either of them adverse to this defendant's fee simple title. That the defendant paid all the taxes on said land for the year 1901, in the further sum of $33.14, together with 46c penalty. That plaintiffs nor either of them, prior to the bringing of this

action, paid any taxes on said fifty-five acres of said land, nor exercised any act of ownership over any part thereof after the execution of the aforesaid deed and mortgage marked 'Exhibit E,' and neither of them claimed at any time to be the owners of any portion of said tract prior to the bringing of this action; never at any time offered to reimburse this defendant for any of the taxes which he had paid or laid out in that behalf or to pay him any of the original indebtedness or interest thereon, but claimed to exercise rights of ownership in the twenty-five acres by him conveyed to the said Mary B. Herbert free and clear of this defendant's aforesaid deed and mortgage and did convey large tracts of the same by deed of general warranty to other and bona fide purchasers and did appropriate the proceeds thereof to their own use and benefit, said conveyance being made subsequent to defendant's conveyance to Mary B. Herbert in the aforesaid final settlement, whereby the said Mary B. Herbert affirmed the aforesaid settlement and conveyance in settlement. During all the time after the aforesaid conveyance marked 'Exhibit E' this defendant was continually selling portions and tracts of said lands to innocent purchasers for value, who were continually erecting extensive and valuable improvements upon said land and improvements worth very much more than the lands upon which they were erected and very much more than the whole tract of land, all of which facts the said Mary B. Herbert was at all times cognizant of and in which she acquiesced and against which she never made protest or objection, although during all the said time residing and in plain view thereof and within a half-mile thereof. That at the time of the settlement of this plaintiff and defendant and at the time of the execution of the conveyances marked 'Exhibits E & F' the said land was of little value, was adjoining the town of Cleveland, Pawnee county, Oklahoma Territory, aforesaid, and which said town did little business, was without a railroad, was twenty-four miles from county seat, and had but small trading territory tributary thereto, and the commercial prospects for the said town were not good, and the prospects for the increase of said town, or the development of said town were not good, and they had no immediate prospects of a railroad, and the said town was difficult of access. That by the platting of said lands and the surveying thereof and the laying the same out as an addition to the town, their value was materially increased, and that by the construction of dwellings and buildings thereon prior

to the bringing of this action, their value was much more increased, and that the commercial outlook for the said town before the bringing of this action had become much brighter, the permanent survey of the Missouri, Kansas and Texas Railway was extended through the said town upon the main line extending from Kansas City, Missouri, to Oklahoma City, Oklahoma, and likewise the St. Louis & San Francisco R. R. had definitely located its line of railway to join the said Missouri, Kansas and Texas Railway with the county seat of said Pawnee county and a few miles distant from said town, and the said lines of railway were in actual course of construction, and since the institution of this action have been built, and by reason of the premises and for other reasons the value of the aforesaid property prior to the commencement of this action had increased in (value) to more than ten times its value at the time of the aforesaid conveyance; and since the commencement of this action it has increased in value many hundred times its value at the commencement of this action, and the plaintiff herein Mary B. Herbert having asquiesced in the aforesaid settlement and conveyance which were in all things fair, reasonable, and just, and having permitted the expenditures by this defendant of large sums of money in the improvements of the said lands, and having slept upon her rights in the premises from the date of the execution of said 'Exhibit E' until the commencement of this action, for a space of more than two years, and having confirmed the aforesaid settlement and conveyance by agreement to procure the signature of her aforesaid husband W. H. Herbert to the conveyances of this defendant, and by conveying land free from the lien of this defendant's mortgage, and which she did by virtue of said settlement, she is now estopped from asserting right, title, interest, or equity in or to the said lands or any part thereof.

"Wherefore this defendant prays that she take nothing by her action, that defendant recover his costs herein, and that said plaintiff be forever barred of all right, title, interest, or equity in or to said lands or any part thereof, and that she be enjoined from in any manner asserting the same, and that this defendant's title in and to the above-mentioned fifty five acres of land be quieted as against all claims of the plaintiff and any and all other persons claiming by, under, or through her, and that this defendant have such other and further relief as is consistent with equity and good conscience."

To this answer of S. R. Wagg the plaintiff filed a reply, con-

sisting of a general denial. Upon the issues thus joined the cause was tried to the court without a jury, and, after a large volume of evidence was submitted by both parties to the action, the court found the issues in favor of the plaintiff and against the defendant, S. R. Wagg. And the court thereupon adjudged and decreed the deed executed by Mary B. Herbert on May 28, 1901, to be a mortgage upon the land described in the plaintiff's petition, and that the mortgage be declared a lien upon said property for the principal sum of one thousand dollars, with interest as stipulated in the mortgage bearing date October 24, 1898, executed by Mary B. Herbert and W. H. Herbert, and subject also to the further provisions of said mortgage, a copy of which is attached to plaintiff's petition. It was further decreed that the plaintiff be reinvested with title to said property, subject to said mortgage lien and for taxes and expenses properly incurred, and that an accounting be had between the plaintiff Mary B. Herbert and the defendant S. R. Wagg, for the purpose of determining the amount of moneys received by Wagg for the lots sold by him and money received from said property, and that in case the defendant Wagg has received from the sale of said property and products of said land a sum in excess of that which is due him under the findings and judgment of the court, judgment be rendered for such sum in favor of the plaintiff and against the defendant. It was further decreed that a referee be appointed for the purpose of taking the testimony and determining the questions arising on the accounting between the plaintiff and defendant Wagg, and to ascertain what land or lots were sold to *bona fide* purchasers prior to the institution of suit, and also find what lots were not sold, and that all parties who were not made defendants in this action or claiming any interest in the property or lots in the Wagg addition should have a right to intervene to have their rights determined in this action, and that the rights of subsequent purchases through and under Wagg be determined, and for costs of this action. To which findings, judgment, and decree of the court the defendant Wagg duly excepted, and which exception was allowed.

Thereupon, within time, the defendant Wagg filed his motion for new trial and asked for a reversal, on the following grounds: First. Because said judgment is not sustained by sufficient evidence. Second. Because said judgment is contrary to law. Third. Because of errors of law occurring at the trial and excepted to by the defendant S. R. Wagg at the time. Fourth. Because the court admitted testimony over the objections of the defendant S. R. Wagg, to which he at the time duly excepted. Fifth. Because the court refused to admit testimony offered by the defendant S. R. Wagg, which refusal was at the time excepted to by the defendant S. R. Wagg. This motion, after being duly considered by the court, was overruled, and exceptions noted, and the defendant S. R. Wagg brings the case here for review.

Opinion of the court by

HAINER, J..: It is the contention of the plaintiff in error that the petition, if all the facts were admitted, does not state facts sufficient to constitute any right to relief. It is further contended that the evidence does not sustain the allegations of the petition fairly construing the most adverse testimony and taking it as uncontradicted. Plaintiff in error further contends that, even if plaintiff below had made out a case on her petition and evidence, the unquestioned and undisputed facts show a complete defense. These contentions in our opinion are clearly untenable. The evidence in this case discloses that after some extended negotiations between W. H. Herbert and his wife, Mary B. Herbert, and the plaintiff in error, S. R. Wagg, the plaintiff secured a loan from Wagg for $1,000, and as evidence of such indebtedness executed to Wagg a promissory note dated October 24, 1898, payable 5 years after date, with interest payable annually in advance. Wagg deducted $100 from the principal sum loaned, being one year's interest. To secure the payment of said note, W. H. Herbert and his wife, Mary B. Herbert, executed a mortgage upon 80 acres of land adjoining the town of Cleveland. At the time of the

execution of the mortgage, and as further security therefor, and in accordance with the previous negotiations, Herbert and his wife executed a warranty deed to the premises, said deed to be deposited in escrow with the Bank of Cleveland, and to be delivered to Wagg upon breach of the terms of the mortgage.

The following letters from S. R. Wagg to W. H. Herbert and Mary B. Herbert will shed some light upon these transactions, and are, we think, very material to the determination of the rights of the parties. One of these, dated Appleton, Wis., September 25, 1898, appears upon page 55 of the record, and reads as follows:

"Appleton, Wis., Sept. 25, 1898.

"W. H. Herbert, Cleveland, Okla.

"My dear Sir:

"Yours of the 15th at hand and it's satisfactory as a fair declaration to do, and I have began to see something of the drift of things. If you was in Wisconsin I would not hesitate a moment. I have no love for such men as you describe and would not. I have been made to hesitate on account of the possible future contingencies. I wrote Mr. Drown about a deed held in escrow against the possible interference or injunction proceedings that scheming men and lawyers trump up. I will bring the matter to a focus at once and make the loan or quit and call it off.

"You execute a warranty deed to me to be placed in escrow and held by the Bank of Cleveland or A. A. Drown in trust·for the fulfillment of the terms of the mortgage in case you fail to fulfill the terms and are in default of interest or other terms for 6 months; then the deed is to be delivered to me or my order. The mortgage is for $1,000.00. I will deduct the first years interest. $100 and send $900.00 to the bank with instructions. This pays one year's interest. The second year's interest is not due until the end of the second year and six months grace on the·end of this makes a full 2 & ½ years before you allow or I can ask for the deed in case of default of contract.

"I do this solely in the interest of protecting myself against injunctional and interference proceedings from interlopers and blackmailers—in case such an unpleasant thing as foreclosure proceedings should ever be necessary. I do not expect such a thing will ever occur. If I did no loan would be made, but I am now looking to the extreme of the case, and its easiest protection for

me. You can ask Mr. Drown how I deal with men. I never knowingly distress a man and am not inclined that way but want contracts lived up to.

"The papers you executed have not arrived here as yet to my knowledge. They will be all right when completed and I have examined them and all that will be necessary is to execute the deed in connection with them and place in the hands of trustees as indicated above for the purpose named. I trust this will meet your views. On execution of papers you can have money.

"S. R. WAGG."

On page 56 of the record appears the following letter from Wagg to the Bank of Cleveland:

"Appleton, Wis., Sept. 30, 1898.

"Bank of Cleveland, Oklahoma.

"Gentlemen:

"Referring to your letter of Sept. 9, 1898, on the Herbert loan; I enclose you $900.00 to perfect the loan after clearing the title perfectly as stated you are willing to do and you are only allowed to pay any money until all liens are paid and the mortgage is recorded wrote and sent; and not until then. This apply money in payment of prior mortgages or liens and clear and perfect title to me so I am first lien and have the money applied as purchase money on the records in liquidating prior claims. There must be also attached to this mortgage the abstract of title under recorder's seal. Map references by name where 80 is located, meets and bounds inserted in the mortgage locating the land so you know it is the identical 80 near Mr. Drown's store, also register's certificate that my mortgage is first lien the title having been cleared and now rests on my mortgage. You are instructed to consult with Mr. Eagleton, Pawnee my paid attorney in this matter; let this in no way affect you in carrying out instructions except to work harmoniously to protect my interests. You also to write me the strongest form of promissory note suitable to attach to the mortgage and payable to my order at your bank. I have also asked Mr. Drown to look over the papers and description of land and locate in my interest and to ask you to let him read this letter. A waiver clause on foreclosure is also inserted in the mortgage, written on the Wisconsin form asking that you carefully protect my interests in the transaction and anything I have omitted to do to notify me before acting further. Charge

Herbert for the work in getting ready the papers for delivery to me with clear title. For handling the money and paying him send the bill to me. I shall want you to collect interest when due with him and future loans.

"All done pay balance to Herbert. Mrs. W. H. have witness to the note.

"Yours truly,<br>"S. R. Wagg.

"To Bank of Cleveland, Oklahoma. You hold the deed in escrow."

And on page 60 of the record appears the following letter from Wagg to the Bank of Cleveland:

"Appleton, Wis., Nov. 8, 1898.

"Bank of Cleveland, Oklahoma.

"Gentlemen:

"You are herewith instructed to deduct your bill of $3.45 from the $900.00 sent you on account of Herbert loan and return balance $896.55 to me, unless Mr. Herbert and wife at once properly executed the mortgage deed (warranty) I sent you; and deposit a warranty deed in escrow with you as trustee; further securing the loan; all as instructed in my prior letters, you to see a clear and full description of the land on limits and boundaries is inserted in mortgage fixing the identity of the land lived on together with an insurance on the house assigned as additional security. All former instruction not in accordance with the above is hereby withdrawn. Your action is requested with bill of services.

"Yours truly,<br>"S. R. Wagg."

It seems from the evidence that a misunderstanding arose between Wagg and the Herberts with reference to the time of the payment of the second installment of interest. It will be observed that Wagg in his letter dated September 25, 1898, stated as follows: "The mortgage is for $1,000.00. I will deduct the first year's interest, $100, and send $900.00 to the bank with instructions. This pays one year's interest. The second year's interest is not due until the end of the second year and six months grace on the end of this makes a full 2 & ½ years before you allow or I can

ask for the deed in case of default of contract." Notwithstanding this letter, Wagg insisted that the interest was due and payable on the 24th of October, 1899, and in response to his letter demanding the second installment of interest, W. H. Herbert writes the following letter, dated October 25, 1899, to Wagg, and which appears on page 64 of the record:

"Cleveland, O. T., Oct. 25, 1899.

"Mr. S. R. Wagg,
"My dear Sir:

"I received an order from you to pay Mr. L. M. Drown $100.00 due, as interest, by the terms of your last letter to me, I have been led to suppose I had considerable time yet, and it caught me by surprise. I can usually furnish $100.00 at short notice.

"The deal from which I can spare the money will not be consummated for two weeks. I ask extension for that time. I send you copy of the letter that I have been governed by, and which I presume has misled me.

" Letter from you, after some preliminaries you write, the mortgage is for $1,000.00. I will deduct the first year's interest $100.00, send $900 to the bank with instructions. This pays first year's interest. The second year's interest is not due until the end of the second year, and six months grace on the end of this makes a full two and one-half years before you allow, or I can ask for the deed in case of default of contract.'

"This is a copy of your letter that I have been governed by and it seems it has misled me.

"I am,                                    Very truly yours,
                                          "W. H. HERBERT."

It will be observed that in this letter Herbert calls the attention of Wagg to the contents of his letter dated September 25, 1898, in reference to the time of the payment of interest. On November 1, 1899, Wagg wrote Herbert the following letter, which appears on page 65 of the record:

"Appleton, Wis., Nov. 1, 1899.

"W. H. Herbert, Cleveland, Okla.
"My dear Sir:

"Your letter of recent date at hand, and noted. We had con-

siderable correspondence prior to the mortgage contract. When the contract is completed and signed that is the agreement. It would be convenient to have the money to use; but if you are hard pressed for money I shall not think of distressing you, for about all I want is security that is safe and does not worry me. When you·get it pay Mr. Drown with deferred interest and get the receipt sent. With best wishes,

"Yours truly,
"S. R. WAGG."

The Herberts, not having paid the second year's interest at the time Wagg demanded the same, Wagg procured the deed from the Bank of Cleveland, and caused it to be placed on record on December 26, 1899, in the office of the register of deeds of said county, and thereafter Wagg claimed to be the owner of said property by virtue of said deed. And on February 17, 1900, he wrote his agent, Drown, the following letter, appearing on page 78 of record, authorizing his agent to collect the rents, etc.:

"Appleton, Wis., Feb. 17, 1900.
'Mr. Leroy Drown,
"Cleveland, Okla.

"You are hereby authorized to act as my agent in looking after my lands and tenants on the Herbert property at Cleveland, Okla. Collect rents monthly; sell the hay crop standing if possible and report to me once in three months and keep me advised of any change of interest from time to time.

"Deposit all proceeds in bank to ·my credit.

"Yours truly,
· "S. R. WAGG."

And again on February 27, 1900, Wagg authorizes his agent, Drown, to take possession of the premises in accordance with the following letter, which appears on page 79 of the record:

"You take possession of all vacant houses, or have it done for me, on the Herbert place. and rent them as best you can. Don't let any squatters get back. They are easy rid of now. Keep rid of them, and don't let a person in except on a good lease, so you can get him out without expense. Herbert we will treat generously. I wish him well.

"Yours,
"S. R. WAGG."

On April 14, 1900, Wagg wrote Herbert and his wife the following letter:

"Appleton, Wis., April 14, 1900.

"W. H. Herbert and wife,
"Cleveland, Oklahoma.

"I expect to be in your city or town·in the near future and inasmuch as the loan of October 1898, is in default of payment of interest, and the 6 months allowed you as grace in which to make it good expires during the month of April, 1900, I ask that you make up all payments due to date either to me or place to my credit in Bank of Pawnee subject only to delivery of my receipt for same, otherwise the title to the Cleveland homestead will by virtue of our agreement and papers of record, pass to my ownership and control. I hope you will pay up past dues and. notify me of action you take in the matter.    I am,

"Yours truly,
"S. R. Wagg."

And on April 30, 1900, Wagg wrote Herbert as follows:

"Appleton, Wis., April 30, 1900.

"W. H. Herbert,
"Wichita, Kansas.
"My dear Sir:

"Your letter of the 27th at hand. I was obliged by circum‧ stances you made, to put my deed on record, allowing the property to be offered at tax sale. I sent money to pay them.

"I do not propose to be hasty or unfair, if you want to pay the interest up, you can do so, I have not asked for any full payment of principal, the interest will do—I had not intended to foreclose or turn you out of the house, and shall not unless you fail to do anything. I expect the hay crop will help pay the interest. I shall trust you for it. I shall expect to be in Cleveland but do not go to the expense to see me. If you are there. I shall be glad to see you.

"Yours truly,
"S. R. Wagg."

On July 12, 1900, Mrs. Herbert wrote Wagg the following letter, which appears on pages 85 and 86 of the record:

"Cleveland, Okla., July 12, 1900.

"Mr. S. R. Wagg,

"Appleton, Wis.

"Dear Sir:

"I write believing you will see the justice of the request I am about to make. The anxiety I suffer in regard to my home is undermining my health. The condition of the land precludes the possibility of my using it to the benefit of myself and children. I wish you to have the equivalent of the rent in land if I do not get the money to pay you, but I do not wish to give double, and since you have seen the land you must recognize it is more valuable than the amount you have in it. I wish to know if you would take half the land for the debt? The half next to Cleveland, which is the more valuable, I presume. I wish to have the other free from incumbrance to cultivate for a living for my children. If you are not willing to do this, would you allow me to sell forty acres, which I can do, to cancel the indebtedness; that is to obtain a purchaser, the money to be paid to you? When you was here you said you did not want the land, you only wanted your money which I am anxious for you to have. I write this knowing you could not possibly in justice to your ideas of right, take all the land for the debt, especially as I am not responsible for it and I would necessarily be the chief sufferer. If you accede to this request you will remove a great burden from me and I can proceed to arrange to have forty acres broken this fall in readiness for cultivation in the spring. The home is so much more to me than the money can possibly be to you; however, I am sure you will understand I desire to settle the affair in justice to us both. I wish you to have your money or its equivalent in land. but I do not want to lose my home. Half of the land means a home to me and support for myself and family, to lose it means to us to be homeless. I present the matter thus plainly that you may realize what is involved in it to me, hence it seems to me the only just way to us both, to settle the affair, under the circumstances, is to divide the land. I mean, of course, if we should be disappointed and be unable to get the money for you before the expiration of the time you have extended. I think I will have it, but as there are few things absolutely certain in life and desiring so much for my health's sake, to be relieved of the strain in connection with the matter, I appeal to you, be-

lieving you will be disposed to show the same mercy you would. like shown to yourself or loved ones.

"Hoping to be favored with an early reply, I am,
"Very respectfully,
"(MRS.) W. H. HERBERT."

To this letter Wagg replied as follows, on July 18, 1900:

"Appleton, Wis., July 18, 1900.

"Mrs. W. H. Herbert,
"Cleveland, Okla.
'My dear Madam:

"Your favor of the 12th is before me, in reply will say I do not incline to a division of the land; but under the condition I will deed back to you the land for $1,300.00 October or November next as you can arrange, the back interest, taxes, expenses incurred and holding the principal five months before loan was closed amounts in all to $1,280.00 and as the loan is for five years, it is a concession I would not make with a business man and only do it to you as your situation merits some consideration, so I do this for immediate action and acceptance on your part—notify me of your intention in the matter.

"Yours resp'y,
"S. R. WAGG."

And again on August 11, 1900, Wagg wrote Mrs. Herbert as follows:

"Appleton, Wis., Aug. 11, 1900.

"Mrs. W. H. Herbert,
"Cleveland, Okla.
"Dear Madam:

"Your favor of some weeks ago, asking for a reconsideration of my declining to divide the land came to hand and is noted. On payment of $1,300.00 October or November 1st, 1900, I will quit-claim deed to you or your purchaser one-half the Herbert homestead deed to me and deed the remaining half farthest from or west of Cleveland to your two boys jointly reserving to you a life interest in the same; provided you explain clearly and satisfactorily to me how and by what means W. L. Eagleton obtained title to the house located on the said homestead and is now renting and claims the rights of a property holder to do so and collect rents. If anything is done would like to close it up entirely. I never

had thought of turning you out and do not expect ever to do such a thing. Awaiting your further communication, I am,

"Yours truly,

"S. R. WAGG."

On August 19, 1900, Mrs. Herbert wrote Wagg in part as follows:

"Your letter of the 11th inst. has been received. I thank you for your consent to a division of the land. The way you propose to deed it is an advantage in some respects and a disadvantage in others from my point of view. I have not yet decided which outweighs the other, however we can speak of this later if desired. I was hoping you would not only agree to a division, but that you would decide to retain the forty acres, because if you would hold it for a year or two I could redeem it with interest on the investment; in other words buy it back from you if you wished to sell it, whereas if it is sold to another party would possibly not have an opportunity to redeem it."

September 15, 1900, Wagg wrote Mrs. Herbert as follows:

"Appleton, Wis., Sept. 15, 1900.

"Mrs. W. H. Herbert,

"Cleveland, Okla.

"Dear Madam:

"I am in receipt of a letter from L. M. Drown regarding an answer to your last letter replying to mine of August 11th, I did not think an answer necessary. However you can go ahead and find a purchaser at $1,300.00 for the east (half) and I will deed the other half jointly to your two boys, giving you the first right to the income from the same in form of a life interst. This places it beyond the power of any one to scheme you out of it. I make this offer solely in the interest of yourself and your boys. I reserve the right of one acre on the east side, near Mr. Drown's store for warehouse purposes, same to be located when deed is made.

"I hope you may be able to realize your wishes in securing a home for yourself and boys. If you cannot make this sale, I will devise another plan later.

"Yours respectfully,

"S. R. WAGG."

On December 24, 1900, Wagg wrote Mrs. Herbert the following letter, which appears on pages 95 and 96 of the record:

"Appleton, Wis., December 24, 1900.

"Mrs. Mary B. Herbert,

"My dear Madam:

"Referring to your last communication, wherein you wanted time to sell extended to Jan. 1901.

"I hope you have been able to find a buyer. However, you can have until March 1st next if you need such time.

"If you should feel like making a division of the land as a final settlement of the matter and passing deeds although I hold a deed of it all and under our agreement it all is now conveyed to me, yet I shall not use any rights I may have harshly but shall deed to you and your boys a piece of the land preferably on which the house is located so you may still live there and have the land to cultivate for your support. You talk it over with Mr. L. M. Drown and have him write me.

"I remain, Yours respectfully,

"S. R. Wagg."

Another question which we must briefly notice in connection with this transaction is, whether the consideration was adequate to induce a fair sale and settlement of the indebtedness existing between the parties. There was evidence offered on behalf of the plaintiff that there was gross inadequacy of consideration, and that the reasonable value of the property was several times in excess of the amount of indebtedness at the date of the execution of the deed dated May 28, 1901. The witness Lytton testified, on page 135 of the record, that the reasonable market value of the land was about $100 per acre at that time. The witness Skinner testified, on page 248 of the record, that the fair value of the land would be from $50 to $100 per acre; and the witness Crismon, on page 257 of the record, testified that the reasonable market value of the land would be $100 per acre at the date of the execution of said deed. On the other hand, the witnesses on behalf of the defendant testify that the land was worth at that time about $25 per acre. So, upon this question the evidence was clearly contradictory.

It appears from all the evidence introduced, and it is conceded in the brief and argument of counsel for plaintiff in error, that the escrow deed was merely a mortgage given as additional security for the payment of the debt. It further clearly appears that the first year's interest was deducted from the loan, and that, according to Wagg's letter to the Herberts, the second installment of interest would not be due until the end of the second year. But this was in contravention of the express terms of the note and mortgage, hence the note and mortgage must govern in that respect. However, we think it sufficient to mislead the Herberts in respect to the time the interest became due, and that it was but fair and reasonable that extended negotiations would follow in respect thereto. But, upon the undisputed testimony, Wagg committed a fraud upon the rights of the Herberts when he procured the escrow deed from the bank and had it placed on record on December 26, 1899, and when he claimed title thereunder. Assuming that the second installment of interest was due on October 24, 1899, and that there was a default in the payment of the interest on December 26, 1899, yet under the express terms of the escrow deed it could not be withdrawn and placed upon record until six months had expired from the date of the default in interest on October 24, 1899. But, even if he had a right to place the escrow deed on record, it could only amount to a mortgage and as additional security for the payment of the indebtedness existing between Wagg and the Herberts. He had no right to claim title thereunder, and he was not entitled to take possession of the premises and collect the rents, etc., as the evidence clearly establishes in this case. To insist that the escrow deed was an absolute conveyance which divested all plaintiffs' title and interest in the property, and to take possession of the property and collect the rents, clearly constitute in equity a fraud upon the rights of the Herberts; and the taking of possession of the premises, collecting the rents, claiming title to the land, and the securing of the deed dated May 28, 1901, was not only taking undue advantage of the

mortgagors, but was an unfair and unconscionable transaction which cannot be upheld by a court of equity. It must, therefore, follow as an irresistible conclusion that the allegations in the petition of fraud, oppression, undue influence, and inadequate consideration were fully sustained by the evidence, and we are unable to perceive how the trial court could have reached any other fair, just, and rational conclusion upon the entire evidence as disclosed by this record.

It is a settled rule of this court, and one which we have reiterated and reiterated time and again, that where the evidence reasonably sustains the finding and judgment of the court, or where the evidence is conflicting, it will not be disturbed by this court. The law of this case is so well settled by the authorities that we deem it necessary to refer to only a few of the leading cases, which we regard as peculiarly applicable to the facts of this case and as decisive of every question arising herein. The leading decision on this class of cases is *Russell v. Southard*, 12 Howard 139, decided by the supreme court of the United States as early as 1851. In this case it was held that: "To insist on what was really a mortgage, as a sale, is in equity a fraud, which cannot be successfully practised, under the shelter of any written papers, however precise and complete they may appear to be. In *Conway v. Alexander*, 7 Cranch 238, C. J. Marshall says: 'Having made these observations on the deed itself, the court will proceed to examine those extrinsic circumstances, which are to determine whether it was a sale or a mortgage.' And in *Morris v. Nixon*, 1 How. 126, it is stated: 'The charge against Nixon is, substantially, a fraudulent attempt to convert that into an absolute sale, which was originally meant to be a security for a loan. It is in this view of the case that the evidence is admitted to ascertain the truth of the transaction, though the deed be absolute on its face.' These views are supported by many authorities. *Maxwell v. Montacute*, Precedents in Ch. 526; *Dixon v. Parker*, 2 Ves. Sen. 225; *Prince v. Bearden*, 1 A. K. Marsh. (Ky.) 170; *Oldham v. Halley*,

2 J. J. Marsh (Ky.) 114; *Whittick v. Kane,* 1 Paige (N. Y.) 202; *Taylor v. Luther,* 2 Sumner (U. S.) 232; *Flagg v. Mann, ibid.* 538; *Overton v. Bigelow,* 3 Yerg. (Tenn.) 513; *Brainerd v. Brainerd,* 15 Conn. 575; *Wright v. Bates,* 13 Verm. 341; *McIntyre v. Humphries,* I Hoff. Ch. (N. Y.) 331; 4 Kent, 143, note A; and 2 Greenl. Cruise, 85, note." And, again, in this case it is stated: "But the inquiry still remains: What amounts to an allegation of fraud, or of some vice in the consideration? And it is the doctrine of this court that when it is alleged and proved that a loan on security was really intended, and the defendant sets up the loan as a payment of purchase money, and the conveyance as a sale, both fraud and a vice in the consideration are sufficiently averred and proved to require a court of equity to hold the transaction to be a mortgage; and we know of no court which has stated this doctrine with more distinctness than the court of appeals of the state of Kentucky. In *Edrington v. Harper,* 3 J. J. Marshall, 355, that court declared: 'The fact that the real transaction between the parties was a borrowing and lending, will, whenever or however it may appear, show that a deed absolute on its face was intended as a security for money; and whenever it can be ascertained to be a security for money, it is only a mortgage, however artfully it may be disguised.'" Upon the question of consideration, this doctrine is announced in this opinion: "In examining this question, it is of great importance to inquire whether the consideration was adequate to induce a sale. When no fraud is practised, and no inequitable advantages taken of pressing wants, owners of property do not sell it for a consideration manifestly inadequate, and, therefore, in the cases on this subject, great stress is justly laid upon the fact that what is alleged to have been the price bore no proportion to the value of the thing said to have been sold. *Conway v. Alexander,* 7 Cranch (U. S.) 241. *Morris v. Nixon,* 1 How. (U. S.) 126; *Vernon v. Bethell,* 2 Eden 110; *Oldham v. Halley,* 2 J. J. Marcsh (Ky.) 114; *Edrington v. Harper,* 3 *ibid.* 354." Upon the question of assent to the sale, the learned court says: "It is

true, Russell must have given his assent to this form of the memorandum; but the distress for money under which he then was places him in the same condition as other borrowers, in numerous cases reported in the books, who have submitted to the dictation of the lender under the pressure of their wants; and a court of equity does not consider a consent, thus obtained, to be sufficient to fix the rights of the parties. 'Necessitous men,' says the Lord Chancellor, in *Vernon v. Bethell*, 2 Eden 113, 'are not, truly speaking, free men; but, to answer a present emergency, will submit to any terms that the crafty·may impose upon them.'" In conclusion, the learned court says: "The conclusion at which we have arrived on this part of the case is, that the transaction was, in substance, a loan of money upon the security of the farm, and, being so, a court of equity is bound to look through the forms in which the contrivance of the lender has enveloped it, and declare the conveyance of the land to be a mortgage." And again, in speaking of the rights of the mortgagee with reference to the extinguishment of the equity of redemption of the mortgagor, the court says: "A mortgagee in possession may take a release of equity of redemption. *Hicks v. Cook*, 4 Dow, P. C. 16; *Hicks v. Hicks et al.*, 5 Gill & Johns (Md.) 85. But such a transaction is to be scrutinized, to see whether any undue advantage has been taken of the mortgagor. Especially is this necessary when the mortgagee, in the inception and throughout the whole conduct of the business, has shown himself ready and skillful to take advantage of the necessities of the borrower. Strong language is used in some of the cases on this subject. It was declared by Lord Redesdale, in *Webb v,. Rorke*, 2 Sch. & Lef. 673, that: 'Courts view transactions of that sort between mortgagor and mortgagee with considerable jealousy, and will set aside sales of the equity of redemption, where, by the influence of his incumbrance, the mortgagee has purchased for less than others would have given.' And Chancellor Kent, in *Holdridge v. Gillespie,* 2 Johns. Ch. (N. Y.) 34, says: 'The fairness and the value must distinctly ap-

pear.' *Wrixon v. Cotter*, 1 Ridg. 295; *St. John v. Turner*, 2 Verm. 418. But strong expressions, used with reference to the particular facts under consideration, however often repeated by subsequent writers, cannot safely be taken as fixing an abstract rule. We think that, in as much as the mortgagee in possession may exercise an undue influence over the mortgagor, especially if the latter be in needy circumstances, the purchase by the former of the equity of redemption is to be carefully scrutinized, when fraud is charged; and that only constructive fraud, or an unconscientious advantage which ought not to be retained, need be shown, to avoid such a purchase."

It will thus be seen that it is not necessary to establish actual fraud, but only constructive fraud, and that an unconscientious advantage was taken of the borrower. We think that in this case the evidence not only clearly proves constructive fraud, but it also clearly proves actual fraud, oppression, undue influence, and unconscientious advantage, and in addition thereto inadequate consideration. But the plaintiff in error, on page 51 of his brief, makes the following remarkable statement: "But the claim of plaintiff in error was right, as a matter of law, or else the supreme court of California, on a statute identical with ours, did not know the rights it was attempting to adjudicate, in *Bradbury v. Davenport et al.*, 52 Pac. 301." We have examined this authority, and an examination of the same discloses the following sentence, immediately following the quotation in the brief of counsel for plaintiff in error: "But, under the facts found, we are unable to perceive wherein the transaction is to be distinguished in any material respect from that sustained in *Watson v. Edwards*, 105 Cal. 70, 75, 38 Pac. 527, and in *McDonald v. Huff*, 77 Cal. 279, 19 Pac. 499, nor in fact why the question is not in effect concluded by what is said on the same subject on the former appeal. *Bradbury v. Davenport*, 114 Cal. 593, 46 Pac. 1062. In *Watson v. Edwards* it was held that section 2889 of the civil code does not affect or refer to a subsequent contract between the mortgagor and mort-

gagee in respect to the title to the mortgaged premises, and it is said: 'A mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee, *where the transaction is fair, honest, and without fraud, and where no unconscionable advantage has been taken of his position by the mortgagee.'* " The italics are ours. We concur with this doctrine announced by the California court, which counsel states is based upon a statute identical with ours. It will thus be seen that the doctrine announced by the California courts is in full harmony with the doctrine announced by the supreme court of the United States in the case of *Russell v. Southard, supra,* and in harmony with the views herein stated. It holds, as all the courts hold, that a mortgagee may purchase from the mortgagor if the transaction is fair, honest, and without fraud or undue influence, and where no unconscionable advantage is taken by virtue of the relation existing between the mortgagor and mortgagee. But upon the issue of fraud, undue influence and unconscionable advantage, the trial court found the issues in favor of the plaintiff and against the defendant, and such finding and judgment of the court upon the evidence adduced is conclusive upon this court, there being ample evidence to sustain such finding and judgment.

In *Vance v. Anderson,* 45 Pac. 818, the supreme court of California has stated the doctrine as follows. "A deed absolute on its face may be shown by parol to be intended as a mortgage. It may be stated as a general proposition that in this state, at least, every conveyance of real property made as security for the performance of an obligation is in equity a mortgage, irrespective of the form in which it is made. Equity looks beyond the mere form in which the transaction is clothed, and shapes its relief in such way as to carry out the true intent of the parties to the agreement; and to this end all the facts and circumstances of the transaction, the conduct of the parties thereto, and their declarations against their own interests, their relations to one another and to the subject-matter, are subjects for consideration. *Campbell v.*

*Freeman,* 99 Cal. 546, 34 Pac. 113; *Pierce v. Robinson,* 13 Cal. 116; *Locke v. Moulton,* 96 Cal. 21, 30 Pac. 957; *Ross v. Bruisie,* 64 Cal. 245, 30 Pac. 811; *Taylor v. McLain,* 64 Cal. 513, 2 Pac. 399."

In *Bradbury v. Davenport et al.,* 46 Pac. 1062, on appeal to the supreme court of California for the first time, the following doctrine is announced: "A conveyance of the mortgaged premises by the mortgagor to the mortgagee, by delivery of deed in escrow, to be delivered in case of the non-payment of the mortgage deed within a certain time, will be set aside where the property is of double the value of the indebtedness." The plaintiff's evidence in this case discloses that the value of the property at the time the last deed was executed on May 28, 1901, was at least three or four times the value of the total indebtedness of the mortgagor. And further in the same opinion it is stated: "In relation to such subsequent agreement, Jones, in his valuable work on Mortgages (Section 251), says: 'A subsequent agreement that what was orig- inally a mortgage shall be regarded as an absolute conveyance is open to the same objection (that is, the objection to such agree- ment in the mortgage itself), and will not be sustained unless fairly made, and no undue advantage is taken by the creditor. The burden is therefore upon the creditor to show that the right of redemption was given up deliberately, and for an, adequate con- sideration.' In support of this proposition, the author cites, among many other cases, *Villa v. Rodriguez,* 12 Wall. (U. S.) 323, from which we quote the following passage: 'The law upon the subject of the right to redeem, where the mortgagor has conveyed to the mortgagee the equity of redemption, is well settled. It is characterized by a jealous and salutary policy. Principles almost as stern are applied as those which govern where a sale by a *cestui que* trust to his trustee is drawn in question. To give validity to such a sale by a mortgagor, it must be shown that the conduct of the mortgagee was, in all things, fair and frank, and that he paid for the property what it was worth. He must hold out no delusive

hopes. He must exercise no undue influence. He must take no advantage of the fears and poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. Where confidential relations and the means of oppression exist, the scrutiny is severer than in cases of a different character. The form of the instruments employed is immaterial. That the mortgagor knowingly surrendered and never intended to reclaim is of no consequence. · If there is vice in the transaction, the law, while it will secure to the mortgagee his debt, with interest, will compel him to give back that which he has taken with unclean hands. Public policy, sound morals, and the protection due to those whose property is thus involved, require that such should be the law.' " The supreme court of California also quotes with approval the doctrine announced in *Russell v. Southard, supra.*

But it is contended by the plaintiff in error that the plaintiffs were guilty of laches. There is no merit to this contention. This suit was commenced in the district court on June 12, 1903, about two years after the execution of the last deed dated May 28, 1901. The note evidencing the indebtedness was dated October 24, 1898, and the mortgage and escrow deed securing the payment of the same were executed at the same time. The escrow deed of October 24, 1898, contains the following stipulation: "This deed is given to be held in escrow as additional security to grantee for loan of $1,000 this day loaned to the grantors, and for which they have this day given the grantee a mortgage on the same land." In *Russell v. Southard, supra,* this same question was raised, and the court in that case said: "This bill was filed after the lapse of nineteen years and eight months from the time the loan became payable. James Southard, the original mortgagee, had then been dead many years. More than sixteen years had elapsed since the defeasance was surrendered; and though we are satisfied Russell was under great embarrassments, and though we are of opinion he himself believed his right to redeem was probably extinguished

by the terms of the defeasance, and its surrender, yet his neglect to look into and assert his rights must not be allowed to subject the defendants to the risk of injustice." So we think that, under the evidence and circumstances of this case, it would be inequitable and unjust for the court to hold that the plaintiff was guilty of such laches as would preclude her from maintaining this action.

What, then, is the status of the plaintiff in error and the defendant in error? The answer to this question we think is clear. It is that of borrower and lender, of debtor and creditor, mortgagor and mortgagee in possession. Equitable principles must control a full and complete settlement of the rights of the parties to this action. Wagg is entitled to be paid for the principal indebtedness, together with interest at the rate specified in the note and mortgage, for all taxes, assessments, and other proper charges and expenses necessary for the management and protection of the estate, and he is responsible to Mrs. Herbert for rents and profits to be applied upon the indebtedness. And the rights of all subsequent purchasers in good faith for a valuable consideration, without notice of the rights of the defendants in error, should be fully protected according to recognized principles of equity. *Romig v. Gillette,* 187 U. S. 111; *Gillette v. Romig et al.,* 17 Okla. 324, 87 Pac. 325.

But it is contended by the plaintiff in error that Mrs. Herbert is estopped from claiming or setting up an interest in the property adverse to Wagg. The doctrine of estoppel has no application to this case, under the well-settled doctrine that a party cannot take advantage of his own wrong. In vol. 2, sec. 917, of Pomeroy's Equity Jurisprudence, it is said: *"Promptness. Delay through Ignorance of the Fraud*—The most important practical consequence of the two principles above mentioned is the requisite of promptness. The injured party must assert his remedial rights with diligence and without delay, upon becoming aware of fraud. After he has obtained knowledge of the fraud, or has been informed of

facts and circumstances from which such knowledge would be imputed to him, a delay in instituting judicial proceedings for relief, although for a less period than that prescribed by the statute of limitations, may be, and generally will be, regarded as an acquiescence, and this may be, and generally will be, a bar to any equitable remedy. To this rule there is one limitation. It applies only when the fraud is known, or ought to have been known. No lapse of time, no delay in bringing a suit, however long, will defeat the remedy, provided the injured party was, during all this interval, ignorant of the fraud. The duty to commence proceedings can arise only upon his discovery of the fraud; and the possible effect of his laches will begin to operate only from that time." And in section 918 of the same work, it is said: *"Persons against whom Relief is Granted.* The remedy which equity gives to the defrauded person is most extensive. It reaches all those who were actually concerned in the fraud, all who directly and knowingly participated in its fruits, and all those who derive title from them voluntarily or with notice. 'A court of equity will wrest property fraudulently acquired, not only from the perpetrator of the fraud, but, to use Lord Cottenham's language, from his children and his children's children, or, as elsewhere said, from any persons amongst whom he may have parceled out the fruits of his fraud.' " In discussing the question of acquiescence and lapse of time, Mr. Pomeroy, in section 965, lays down the following doctrine: "A second mode by which the remedial right may be destroyed, and the transaction rendered unimpeachable, is acquiescence. The term 'acquiescence' is sometimes used improperly. It differs from confirmation on the one side, and from mere delay on the other. While confirmation implies a deliberate act, intended to renew and ratify a transaction known to be voidable, acquiescence is some act, not deliberately intended to ratify a former transaction known to be voidable, but recognizing the transaction as existing and intended, in some extent at least, to carry it into effect, and to obtain or claim the benefits resulting from it. The theory of the doctrine is that

a party, having thus recognized a contract as existing, and having done something to carry it into effect and to obtain or claim its benefits, although perhaps only to a partial extent, and having thus taken his chances, cannot afterwards be suffered to repudiate the transaction and allege its voidable nature. It follows that *mere* delay, mere suffering time to elapse without doing anything, is not acquiescence, although it may be, and often is, strong evidence of an acquiescence; and it may be, and often is a distinct ground for refusing equitable relief either affirmative or defensive. An acquiescence is thus a recognition of and consent to the contract or other transaction as existing; the requisites to its being effective as a bar are knowledge or notice of the transaction itself, knowledge of the party's own rights, absence of all undue influence or restraint, and consequent freedom of action. A conscious intention to ratify the transaction, however, is not an essential element. When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity."

It will thus be seen that the question of laches, acquiescence, and estoppel are dependent upon its own circumstances, and whether they must exist we must determine that question from all the facts and circumstances involved in the controversy; and, again, upon this issue the court having found in favor of the plaintiffs and against the defendant, and such finding being sustained by sufficient evidence and in harmony with the settled doctrines of equity jurisprudence, such findings of fact are conclusive upon

this court. Nor do we think there was any error in admitting or excluding any material or competent testimony in the course of the trial. If it was error to admit the memorandum on page 58 of the record, it was clearly harmless and could not have affected the result of this case, and it is to be presumed that the court, sitting as a chancellor, only considered material, competent, and relevant testimony in making up its findings and rendering the decree in this case. Nor was there any error in rendering the decree in the case.

It follows that the court, upon the evidence and laws of this case, rightfully found the issue in favor of the plaintiffs and against the defendant, and decreeing that the deed executed on May 28, 1901, was a mortgage. The judgment of the district court of Pawnee county is affirmed.

Burford, C. J., who presided in the court below, not sitting; Pancoast and Garber, JJ., absent; all the other Justices concurring.